Lynn JOHNSTON, Appellant

v.

Dennis A. KRUSE, Individually, Kruse
Holdings, L.P., and Kruse Holdings,
L.P., Inc, Appellees.

No. 05–07–01488–CV.

Court of Appeals of Texas,
Dallas.

Aug. 29, 2008.

W. Kelly Puls, Puls, Taylor & Woodson, L.L.P., Fort Worth, TX, for Appellant.

Michael P. Aigen, Lackey Hershman, L.L.P., Dallas, TX, for Appellee.

Before Justices MOSELEY, FRANCIS, and LANG.

## OPINION

Opinion by Justice FRANCIS.

Lynn Johnston sued Dennis A. Kruse, Individually ("Kruse"), Kruse Holdings, L.P. ("the company"), and Kruse Holdings, L.P., Inc. after the company failed to abide by alleged oral contracts to employ him and pay him commissions. Appellees moved for both traditional and "no evidence" summary judgment on appellant's various claims. In two issues, appellant contends the trial court erred in granting summary judgment to appellees and in denying his motion for continuance of the summary judgment proceedings so that he might take a witness's deposition. We affirm in part, and reverse in part, the trial court's summary judgment.

Appellant's first issue challenges the trial court's decision to grant summary judgment. We review the summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). We take as true all evidence favorable to the nonmovant and we indulge every inference and resolve all doubts in the nonmovant's favor. *Id.*

In reviewing the traditional portion of the motion for summary judgment, we determine whether appellees met their burden to establish no genuine issue of material fact exists and they are entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Provident,* 128 S.W.3d at 215–16. Appellees are entitled to summary judgment if they conclusively negate an essential element of each of appellant's causes of action. *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002). In reviewing the "no evidence" motion, for each essential element of a claim about which appellees allege there is no supporting evidence, we determine whether appellant presented to the trial court more than a scintilla of evidence raising a genuine issue of material fact. *See* Tex.R. Civ. P. 166a(i); *Grant,* 73 S.W.3d at 215.

The evidence shows appellant and Kruse became friends when appellant, a bank loan officer, oversaw Kruse's loan. During a period when appellant experienced personal and professional difficulties, Kruse gave him several thousand dollars. In a November 2002 conversation in Kruse's driveway, appellant asserts Kruse offered him a job with the company, a new broadband networking entity Kruse was developing. Appellant alleges the parties agreed he would join the company as vice president of corporate development with an annual salary of $175,000, a signing bonus of between $25,000 and $100,000, and a three-percent ownership interest in the company. Appellant contends he accepted Kruse's offer and began working for the company immediately. Kruse denies offering appellant employment, but he

admits giving appellant three percent of the company.

Although appellant had no specific responsibilities until the company opened, he introduced Kruse to between twenty and thirty potential investors, gave Kruse advice, and served as a sounding board. In December 2002 and throughout 2003, he estimates he worked ten to fifteen hours per week on appellees' business and an additional eight to ten hours per week during the first quarter of 2004. None of the potential investors appellant brought in invested in the company.

Appellant contends the parties reached a second oral contract during a meeting in late November 2002. During this meeting, appellant introduced Rick Randall, his longtime friend, to Kruse, and Randall agreed to raise investment capital for the company. To compensate appellant for having brought in Randall, Kruse agreed to pay him a three-percent commission on all investments Randall raised. Kruse denies agreeing to pay appellant a commission.

In April 2004, appellees ceased communicating with appellant. Appellant believes the company opened for business in the first or second quarter of 2005. Appellant was not invited to join and has not performed any work for the company since it opened. Appellant contends he is an employee because he accepted a position with the company and has never been terminated. Although the document was not introduced into evidence, appellant testified appellees distributed a private placement memorandum to potential investors showing him as a corporate officer who owns three percent of the company. Appellant admits appellees sent him partnership documents to sign regarding his interest, but he refused to sign them because he did not like some of the provisions. Appellant contends Kruse misrepresented to him that Randall had not brought in any

money. Appellant contends he is entitled to commissions on a number of investments Randall brought in, although he does not know how Randall's fund-raising breaks down between investments and loans.

Although appellant brought a number of claims in the trial court, during the summary judgment proceedings, and now on appeal, he defends only the breach of contract, quantum meruit, and breach of fiduciary duty claims. We turn first to the traditional summary judgment on the alleged oral contracts. Among other grounds, appellees contended they were entitled to summary judgment because the alleged contracts are unilateral and lack consideration and, thus, are unenforceable.

█ A contract that does not require a party to furnish consideration, or oblige him to do anything, lacks mutuality, is unilateral, and is unenforceable. *See Peterson v. Dean Witter Reynolds, Inc.*, 805 S.W.2d 541, 550 (Tex.App.-Dallas 1991, no writ). Appellant concedes his contract was unilateral. Appellant contends, however, that unilateral contracts may bind a promissor if his promise is not illusory. Drawing upon *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642 (Tex.1994), appellant concedes the promise of employment would be illusory under Texas law, but he contends the promises of an ownership stake, bonus, and commissions on the Randall contract are non-illusory. Under appellant's theory, Kruse's agreement to provide the ownership stake, bonus, and commissions constituted offers which appellant could accept by performance. *See Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 650 (Tex.2006); *Light*, 883 S.W.2d at 645 n. 6.

█ An illusory promise is one that fails to bind the promissor because he retains the option to discontinue performance without notice. *Rogers v. Alexander*,

244 S.W.3d 370, 382 (Tex.App.-Dallas 2007, no pet.). A unilateral contract will be binding if one party makes a promise, treated as an offer, and the promisee accepts the offer by performing the act the promissor requested. *See Sheshunoff*, 209 S.W.3d at 650; *Dodson v. Stevens Transp.*, 776 S.W.2d 800, 805 (Tex.App.-Dallas 1989, no writ).

■ Appellant contends he accepted the offered unilateral contracts through performance when he accepted employment in the driveway, promised to deliver Randall to raise venture capital, and commenced work for the company. Appellees respond appellant was not required to, and did not perform, any bargained-for acts. We agree with appellees.

The bargained-for performance appellant would need to perform to accept Kruse's offer of employment with the company was to assume the duties of an officer with the company. It is undisputed that appellant would not be eligible for paid employment until the company acquired investment capital and became operational. In his deposition, appellant testified he accepted employment and "functioned in the job day one." Appellant admitted, however, that he was not obligated to do anything, there was no money to pay him, and it would be "a delayed payment." Appellant testified the salary was to begin when a loan funded or another investor invested sufficiency funds. In responding to questioning about how much money would be required before he would have a right to a salary, appellant admitted the matter was discussed but not finally resolved:

> there were discussions ranging from how—what size scope the amount of money we raised could start. Could we do it just in Dallas. Were we going to do all of East Texas. Obviously, those were all funding questions or the funding requirements to see how far you expanded the business, the towers. So anywhere from—you know, we thought minimum at least we could start was a half a million at one point. We might try—we talked to a lot of people about five million. The USDA loan was in excess of six million.... It was—there was no question of being paid, and there was no parameters on how much had to be raised. It was when we started the company, operational. The rest of the time it's sweat equity.... It depended upon the—how wide a market we wanted to begin with. And there were several discussions throughout this time period. Initially, you know, the USDA loan was over six million. We were talking to some people at five million. Three million.

Appellant admitted he did not know if the company had ever raised sufficient funds to pay salaries to any officers. The amount of the bonus, discussed initially as a rather broad range, was never actually established. The only information about the company's capital and performance comes from Kruse's affidavit in support of summary judgment in which he avers "the company was a start-up, never made a profit, and never made any profit distributions to any partners."

It is also undisputed that appellant's association with appellees ended, somewhat informally, in April 2004. The evidence shows the company did not become operational until sometime in 2005. There is no evidence to show appellant's prospective employment with the company was anything other than "employment at will" which may be terminated at any time. *See Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998).

Appellant did perform some services for the company before it became operational. These services, however, do not constitute bargained-for performance under the al-

leged contract. Appellant admitted the contract did not require him to perform any specific duties at the time he allegedly accepted it on the driveway. Appellant contends, however, that he performed various services as sounding board, advisor, and fund-raiser during the pre-start up phase of the company. Appellant testified he "was part of the team" and he "made every effort and, you know, helped." In a March 4, 2004 email to Kruse, however, appellant describes the services as "free labor" and provides suggestions for how he could be compensated with a three-to-five-percent profits interest in the company, commission on investment funds received by the company, and a timetable to join the company. Nothing in the record shows appellant's preliminary services constituted performance under his putative employment contract, and his email, showing he was seeking a formula for remuneration for the services, precludes any inference that the services were performed under his existing contract. Thus, we conclude appellant did not perform under his employment contract. *See Sheshunoff*, 209 S.W.3d at 650. *Cf. Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 794 (Tex. App.-Dallas 2007, no pet.) (evidence that plaintiff worked and offered to use contacts and knowledge of outlets to help defendant "do all this stuff" held insufficient to show parties agreed to scope of duties so as to create enforceable contract).

■ Appellant contends his commission agreement is enforceable under three grounds: (1) as a bilateral contract involving his promise to bring Randall to the table in exchange for the promised commission, (2) as a promise made as further incentive for his work with appellees, and (3) as a possible third-party beneficiary of appellees' contract with Randall. None of appellant's theories are supported by the evidence. Appellant testified he was not contractually obligated to introduce Randall to Kruse. The parties had no existing contract providing appellant would receive commissions for funds raised by individuals he brought in. Kruse offered him the three-percent commission deal during the meeting with Randall. Thus, the evidence does not support a theory that there was a bargained-for exchange of consideration between appellant and appellees to set up the Randall meeting. Similarly, no evidence in the record shows the Randall commission contract was set up to provide appellant with further incentives for work he testified he was not obligated to do. Finally, Randall's contract with appellees, if there is one, is not in the summary judgment record, and there is no evidence establishing appellant as an intended third-party beneficiary of that contract. *See MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999) (explaining rules to establish and enforce third-party beneficiary contract).

Appellant contends the trial court erred in granting summary judgment to appellees on the issue of appellant's ownership interest in the company. Appellees attached to their motion for summary judgment Kruse's affidavit averring he gave appellant a three-percent interest in the company. Appellant's deposition testimony concedes Kruse forwarded partnership papers to him to sign reflecting his three-percent interest, but appellant refused to sign the papers because he did not like certain provisions in the document. In his summary judgment response, appellant conceded he had received the promised three-percent interest in the company. In his appellate brief, appellant concedes "with respect to Appellant's claim for a 3% interest in the company, such promise has been fulfilled . . . ." Because appellees' fulfillment of the promise to transfer an interest in the company appears to be undisputed, this issue is moot. *See Young v.*

*Young,* 168 S.W.3d 276, 287 (Tex.App.-Dallas 2005, no pet.) (issue is moot if either a party seeks a judgment on a controversy that does not really exist or a party seeks a judgment which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy). Because the parties' putative contracts are either unenforceable or already fulfilled, we conclude the trial court did not err in granting summary judgment on appellant's breach of contract claim.

■ As an alternative to his breach of contract claim, appellant sued for recovery under quantum meruit for his preliminary work for the company. Appellee's motion for summary judgment asserted there was no evidence to support appellant's quantum meruit claim. Appellant first contends appellee's motion was insufficient in that it did not identify the element of his quantum meruit claim alleged to be insufficient. *See AIG Life Ins. Co. v. Federated Mut. Ins. Co.,* 200 S.W.3d 280, 284 (Tex. App.-Dallas 2006, pet. denied) (requiring "no evidence" motion for summary judgment to specify which elements of claim lack supporting evidence).

■ To recover on a claim for quantum meruit, appellant must show (1) he rendered valuable services, (2) for appellees, (3) they accepted his services, and (4) he rendered the services under circumstances as would reasonably notify them that he expected to be paid. *See Lamajak,* 230 S.W.3d at 795. Appellees' motion for summary judgment asserted there was no evidence appellant rendered valuable services to them. Appellees pointed out that none of the investors appellant introduced to Kruse invested any money in the company, and appellant testified in his deposition that he could not place any value upon his services. Appellant's brief acknowledges his understanding that appellees were challenging the "valuable services" element of his claim. We conclude appellees'

motion was adequate to raise a "no evidence" issue on this element. *See AIG,* 200 S.W.3d at 284.

Turning to the merits of the issue, appellant's affidavit in support of his summary judgment response averred he:

> put in 10 to 15 hours per week during 2003 and 8 to 10 hours per week for the first quarter of 2004. At a rate of $50.00/hr, which is a reasonable pay rate for my work, the value of my time spent working for Kruse Holdings, L.P. is between $30,800.00 and $45,000.00. Mr. Kruse knew that I was working for Kruse Holdings, L.P. and consented to my work on its behalf. He never told me to stop efforts to raise money, meet with bankers or CPAs. He knew that I was looking to the Defendants for payment of my services. I was never paid anything in return for my services.

During his deposition, appellant testified his work was valuable because he "provided credibility to get a lot of people in front of [Kruse]. I got two billionaires or their people in front of [Kruse]. Lots of other smaller investors. I brought Randall in. I got that arranged and Randall was very successful to that." Appellant further testified he served as a sounding board and advisor to Kruse. Appellant testified he had not calculated the value of his services and he was not sure he had the expertise to make the calculation.

■■ Appellees contend the deposition testimony and affidavit conflict with regard to the value of appellant's services. In general, a deposition does not have controlling effect over a conflicting affidavit in determining whether a motion for summary judgment should be granted. *See Randall v. Dallas Power & Light Co.,* 752 S.W.2d 4, 5 (Tex.1988). Thus, a fact issue precluding summary judgment arises when evidence is presented showing a party's affidavit and deposition conflict. *See*

*id.* Some courts have concluded that in certain egregious cases, an affidavit, prepared after a deposition and clearly contradictory to the earlier testimony, should be disregarded if the discrepancy is not explained and it appears the affidavit was drafted as a sham for the sole purpose of avoiding summary judgment. *See, e.g., Farroux v. Denny's Restaurants, Inc.,* 962 S.W.2d 108, 111 (Tex.App.-Houston [1st Dist.] 1997, no pet.). Appellees urge us to apply the "sham affidavit" doctrine to disallow the conflicting testimony.

 In the present case, however, appellant's affidavit does not directly contradict his deposition testimony. Appellant's deposition establishes that he does not consider himself qualified to render an expert opinion on the value of his services. We read his affidavit as providing a layman's estimate of their reasonable value. The measure of damages for a quantum meruit claim is the reasonable value of the work performed. *Lamajak,* 230 S.W.3d at 796. Reasonable value may be established through lay testimony. *Id.* Although the friction between appellant's affidavit and deposition testimony might affect the credibility of his estimate, we conclude his affidavit constitutes more than a mere scintilla of evidence showing he rendered valuable services to the company. *See id.* (upholding award of quantum meruit damages grounded on plaintiff's non-expert estimate of reasonable value); *see also Prospect High Income Fund v. Grant Thornton, L.L.P.,* 203 S.W.3d 602, 620 (Tex.App.-Dallas 2006, pet. denied) (concluding plaintiff's affidavit and deposition testimony, despite conflicts with other portions of deposition, raised sufficient evidence to defeat summary judgment).

Appellant's affidavit states expressly that he was working for Kruse Holdings, L.P. He provides no evidence of any valuable services on behalf of Kruse, individually, or Kruse Holdings, L.P., Inc. Thus, we agree with appellant that the trial court erred in rendering a "no evidence" summary judgment on his claim for quantum meruit as to Kruse Holdings, L.P.

 Appellant next contends he presented sufficient evidence to avoid "no evidence" summary judgment on his claim for breach of fiduciary duty. In his summary judgment response, appellant asserted Kruse owed him a fiduciary duty because the parties enjoyed a confidential relationship growing out of their friendship and appellant's status as a limited partner in the company. Appellant asserted Kruse breached Kruse's fiduciary duty to him by lying to him about the money Randall raised in an effort to avoid paying his commission on the money Randall raised.

 To prevail on a claim for breach of fiduciary duty, appellant must show (1) he enjoyed a fiduciary relationship with appellees, (2) appellees breached their fiduciary duty to him, and (3) the breach injured him or benefitted them. *Jones v. Blume,* 196 S.W.3d 440, 447 (Tex. App.-Dallas 2006, pet. denied). A fiduciary duty may arise formally, such as in attorney-client or trustee relationships, or informally, through moral, social, domestic, or purely personal relationships of trust and confidence. *Meyer v. Cathey,* 167 S.W.3d 327, 330–31 (Tex.2005) (per curiam); *Jones,* 196 S.W.3d at 447. In order to give full force to contracts, we do not impose an informal fiduciary duty lightly and the special relationship of trust and confidence must exist prior to and apart from the disputed agreement. *Meyer,* 167 S.W.3d at 331. In cases where the facts are undisputed, the existence and breach of a fiduciary relationship is a matter of law for the court to decide. *Id.* at 330.

Assuming, without deciding, that the relationship between the parties qualifies as a fiduciary relationship, appellant provided

no evidence of a breach of any fiduciary duty. Appellant's sole evidence is an averment in his affidavit averring Kruse lied to him about Randall's fundraising so as to avoid paying him a commission. The Randall commission, however, lacked any consideration on appellant's part. Appellant cites no authority showing Texas law would extend the concept of formal or informal fiduciary duty to encompass an otherwise unenforceable, gratuitous promise.

Appellant also contends he presented sufficient evidence to overcome appellees' motion for "no evidence" summary judgment on his contention that Kruse should be held personally liable for whatever damages he recovers. Appellant contends he raised evidence to show Kruse acted in his personal capacity through paragraph 13 of his affidavit which states in its entirety:

> The promises made by Mr. Kruse to me in November, 2002, were personal obligations. He never distinguished the promises made as being promises of the business entities involved as opposed to personal promises made by him as an individual. I looked to his promises to me as being personal promises as well as promises made on behalf of the business entities. I looked to Mr. Kruse, personally, to perform the promises he made to me in his driveway in November 2002 and at the Fairmont Hotel in November 2002. He bound himself and his entities to the promises he made to me in his driveway and over lunch at the Fairmont Hotel.

The trial court sustained appellee's objection to the first sentence of the paragraph 13 averment as expressing a legal conclusion. The affidavit directly contradicts appellant's deposition testimony wherein he testified Kruse made the promises as a representative of the entities rather than as an individual.

In his original petition, appellant raised a fraud claim and made alter ego allegations. He did not defend the fraud and alter ego claims in the summary judgment proceedings and does not advance either on appeal. *See Shaw v. Maddox Metal Works, Inc.*, 73 S.W.3d 472, 481 (Tex.App.-Dallas 2002, no pet.) (nonmovant must expressly present all grounds for precluding summary judgment to the trial court). Thus, appellant's contentions of Kruse's individual liability rest entirely upon the alleged contractual promises. For other reasons we have already discussed, the trial court did not err in granting summary judgment on the contract claims. Thus, we conclude the trial court did not err in granting summary judgment to Kruse individually.

Having considered all of appellant's grounds for overturning the summary judgment on its merits, we sustain appellant's first issue as to the quantum meruit claim against Kruse Holdings, L.P. and overrule it as to all other claims against all appellees.

■ In his second issue, appellant contends the trial court abused its discretion by denying his motion for continuance. Appellant sought the continuance to take Randall's deposition.

■ We review for clear abuse of discretion the trial court's determination to deny a motion for continuance. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex.2004). We will find an abuse of discretion, on a case-by-case basis, when the trial court's decision is so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* In determining whether the trial court abused its discretion in denying a motion for continuance seeking additional discovery, we may consider the following nonexclusive factors: the length of time the case has been on file, the materiality and purpose of the

intended discovery, and whether the movant exercised due diligence in seeking the discovery. *Id.*

In this case, all of the factors support the trial court's decision. Appellant filed this case on June 2, 2005. According to the trial court's agreed scheduling order, the case was set for trial on September 24, 2007 with a deadline for motions for summary judgment of August 27, 2007. Appellant was deposed on March 7, 2007 and then again on June 6, 2007. During the June deposition, when pressed to provide specific information about commissions appellees allegedly owed him for investments Randall procured, appellant stated, "I don't have—I don't think I have total knowledge, [counsel], of what all [Randall] brought in. But, you know, if we ever get to depose [Randall], we can probably find out."

Appellees filed their motion for summary judgment on July 26, 2007. A hearing was set for August 30, 2007. On August 23, 2007, appellant filed his summary judgment response. On August 24, 2007, appellant filed a motion for continuance, seeking additional time to take Randall's deposition. Appellant contended Randall's testimony was necessary to refute appellees' contention he had "no evidence" showing the breakdown of investments to loans Randall had raised. In a supporting affidavit, counsel averred Randall had refused to sign an affidavit appellant had prepared for him because he feared Kruse would sue him. In their response, appellees asserted the discovery deadline in this case was February 26, 2007 and they alleged appellant had engaged in a series of delaying tactics. The trial court declined to grant a continuance.

This case was pending for over two years when appellant requested the additional time for discovery. The deposition testimony appellant sought applied only to a small issue in the case and was cumula-tive of appellant's existing testimony showing Randall had raised funds for appellees. We cannot conclude appellant exercised due diligence when he waited until six days before the summary judgment hearing to request the continuance and his June 6th testimony shows he already knew he needed Randall's evidence. Accordingly, we conclude the trial court did not abuse its discretion in denying appellant's motion for continuance. *See id.* We overrule appellant's second issue.

We reverse the trial court's summary judgment in favor of appellee Kruse Holdings, L.P. on appellant's claim for recovery in quantum meruit. We otherwise affirm the trial court's summary judgment.