**BALEARES LINK EXPRESS, S.L. d/b/a Hola Airlines, Appellant,**

**v.**

**GE ENGINE SERVICES–DALLAS, LP, and GE Engine Services–Dallas, Inc., Appellees.**

**No. 05–09–00114–CV.**

Court of Appeals of Texas, Dallas.

March 4, 2011.

Christopher B. Bradford, Clark, Thomas & Winters, Austin, TX, for Appellant.

Robert F. Ruckman, Stuart Bradley Brown, Jackson, Walker, LLP, Dallas, TX, for Appellees.

Before Justices BRIDGES, FITZGERALD, and FILLMORE.

## OPINION

Opinion By Justice FITZGERALD.

Appellant Baleares Link Express, S.L. d/b/a Hola Airlines ("Hola") sued appellees GE Engine Services—Dallas, LP and GE Engine Services–Dallas, Inc. (collectively "GEES") for fraud and breach of the implied warranty of good and workmanlike repair. Hola alleges that GEES performed repair services on an aircraft engine that Hola later leased and operated. Hola further alleges that the engine failed during operation three and half years after GEES performed the repair services, causing extensive property damage. GEES obtained summary judgment based on statute of limitations and no-evidence grounds. On appeal, Hola raises three issues challenging the merits of the summary judgment and one issue challenging the denial of its motion for continuance. We affirm.

## I. BACKGROUND

### A. Hola's allegations

Hola alleged the following facts in its live pleading. Hola leased an aircraft (registration EC–IEZ) on April 10, 2002. Hola operated aircraft EC–IEZ as a passenger jet. In October 2003, aircraft EC–IEZ experienced a catastrophic engine failure while taxiing into position for takeoff. Hola later discovered that the cause of the engine failure was a malfunctioning part called a roller bearing. Hola incurred over $1 million to repair the engine, and it also suffered lost income while aircraft EC–IEZ was grounded.

The roller bearing that malfunctioned had been installed on the engine in or about April 2000 by GEES. GEES then installed the engine on aircraft EC–IEZ. GEES also issued FAA Airworthiness Approval Tags for the engine on three occasions in 2000 and 2001. As noted above, Hola began leasing aircraft EC–IEZ in April 2002.

### B. Procedural history

Hola sued GEES in April 2006. Hola originally asserted several legal theories against GEES, but by the time of the summary-judgment hearing it had limited those theories to two: fraud and breach of the implied warranty of good and workmanlike repairs. In June 2008, GEES filed a motion for summary judgment. GEES argued that both of Hola's claims were barred by the statute of limitations. GEES also asserted no-evidence challenges as to all the elements of both of Hola's claims.

Hola filed a summary-judgment response with evidence, and the trial judge held a hearing on GEES's summary-judgment motion. The hearing could not be completed in the time allowed, so the judge continued the hearing for about a month. In the interim, Hola filed some additional summary-judgment evidence along with a request for leave to supplement its summary-judgment evidence. The trial judge signed an order granting leave. Also in the interim, the judge made a docket entry indicating that she was granting GEES's motion as to the implied-warranty claim. When the summary-judgment hearing resumed, Hola asked the judge for time to conduct additional discov-

ery, and the judge orally granted Hola roughly forty-five more days to find and file additional evidence. Hola then filed supplemental summary-judgment evidence within the forty-five-day period. Hola filed additional supplemental evidence about a month after that. A few days later, Hola filed a motion captioned "Plaintiff's Motion to Deny the Motion for Summary Judgment, Vacate Partial Summary Judgments and Alternative Motion for Continuance." Hola attached additional evidence to this motion.

A few weeks after Hola's last filing, the trial judge signed a final judgment granting GEES's motion for summary judgment and ordering Hola to take nothing from GEES. The judge also signed an order sustaining objections that GEES had made to some of Hola's evidence. Hola appealed.

## II. STANDARD OF REVIEW

In four issues, Hola contends that the trial court erred by granting summary judgment against it and by denying Hola's motion for continuance.

We review a summary judgment de novo. *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex.App.-Dallas 2009, no pet.). When we review a traditional summary judgment in favor of a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Id.* We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex.2007) (per curiam). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *In re Estate of Hen-*

*dler*, 316 S.W.3d 703, 707 (Tex.App.-Dallas 2010, no pet.).

When we review a no-evidence summary judgment, we inquire whether the nonmovant adduced sufficient evidence to raise a genuine issue of fact on the challenged elements. *Smith*, 285 S.W.3d at 909. We review the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). If the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to the challenged elements, a no-evidence summary judgment must be denied. *See U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 165 (Tex.App.-Dallas 2008, no pet.). That is, a no-evidence summary judgment should be reversed if the evidence is sufficient for reasonable and fair-minded jurors to differ in their conclusions. *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).

We review a trial court's denial of a motion to continue a summary-judgment hearing for clear abuse of discretion. *Johnston v. Kruse*, 261 S.W.3d 895, 903 (Tex.App.-Dallas 2008, no pet.).

## III. ANALYSIS

### A. Limitations and the implied warranty of good and workmanlike repair

In Hola's fourth issue on appeal, it contends that the summary judgment on its implied-warranty claim cannot be supported on the ground of limitations. We reject Hola's argument.

#### 1. Issue presented

█ To justify summary judgment based on its affirmative defense of limita-

tions, GEES had to (1) prove by conclusive evidence when Hola's implied-warranty claim accrued, and (2) negate the discovery rule, if it applied and was properly raised by Hola, by conclusively proving when Hola discovered, or in the exercise of reasonable diligence should have discovered, its injury. *See KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). GEES sought summary judgment on Hola's implied-warranty claim based on the following propositions: (1) the statute of limitations for the claim is four years; (2) the injury, if any, occurred at the time GEES rendered its services in mid–2000; and (3) the discovery rule does not apply to Hola's implied-warranty claim. Thus, GEES concluded, Hola's filing of suit in April 2006 was untimely. On appeal, GEES argues for the first time that a two-year limitations period should apply to Hola's claim. We decline to address that argument because it was not raised in the trial court and because it is not material to our disposition of the issue.

■ On appeal, Hola attacks only the third step of GEES's limitations ground. That is, Hola argues only that the discovery rule does apply to its implied-warranty claim, and that GEES failed to prove conclusively that Hola's claim was filed untimely under the discovery rule. Accordingly, we limit our analysis to that issue.

**2. Applicability of the discovery rule**

■ The general rule is that a claim accrues for purposes of limitations "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 840 (Tex.App.-Dallas 2008, no pet.) (internal quotations and citation omitted); *accord Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex.1998). But in some cases, the discovery rule defers accrual

until the plaintiff knows, or in the exercise of reasonable diligence should know, of the facts giving rise to its cause of action. *Barker v. Eckman*, 213 S.W.3d 306, 311–12 (Tex.2006). The supreme court has "restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam). Thus, the discovery rule applies "only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex.2001); *see also S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex.1996). We decide the first prong of the test on a categorical basis rather than a case-specific basis. *Via Net*, 211 S.W.3d at 313–14. That is, we focus on whether the type of injury in question, and not the particular injury, is unlikely to be discovered within the prescribed limitations period despite due diligence. *Id.*

There is little case law on point, but a few courts have applied the discovery rule to claims for breach of implied warranties. In one case, the defendant installed a gas line running to a home and allegedly damaged a water line in the process, causing a leak and subsequent foundation problems. *Fontenot v. Kimball Hill Homes Tex., Inc.*, No. 14–00–01375–CV, 2002 WL 834468, at *3 (Tex.App.-Houston [14th Dist.] May 2, 2002, no pet.) (not designated for publication). The Houston Fourteenth Court of Appeals held that the particular type of underground injury was inherently undiscoverable, and thus that the discovery rule applied to the plaintiffs' claim for breach of implied warranty. *Id.* at *4–5. In another case involving structural problems with a building, the El Paso Court of Appeals stated, "Actions for breach of express or implied warranties are also governed by the four-year statute of limitations *and the discovery rule.*" *El Paso*

*Assocs., Ltd. v. J.R. Thurman & Co.,* 786 S.W.2d 17, 20–21 (Tex.App.-El Paso 1990, no writ) (emphasis added). In a case involving a homebuilder's implied warranty of good and workmanlike construction, the Tyler Court of Appeals stated, "A homeowner's action against a builder for breach of implied warranties is barred four years from the time the homeowner knew of the alleged defect." *Ben Fitzgerald Realty Co. v. Muller,* 846 S.W.2d 110, 118 (Tex. App.-Tyler 1993, writ denied); *see also Richman v. Watel,* 565 S.W.2d 101, 102 (Tex.Civ.App.-Waco) (holding that claim for breach of implied warranty relating to new home accrues "when the buyer discovers or should discover the injury"), *writ ref'd n.r.e.,* 576 S.W.2d 779 (Tex.1978) (per curiam).

■ By contrast, we refused to apply the discovery rule to express and implied warranty claims in *Fightertown, Inc. v. K–C Aviation, Inc.,* No. 05-96-01998-CV, 1999 WL 701491 (Tex.App.-Dallas Sept. 10, 1999, pet. denied) (not designated for publication). Fightertown hired K–C to paint an airplane, and signs of corrosion emerged from underneath the paint about a year later. *Id.* at *1. K–C repainted the airplane, and Fightertown discovered more signs of corrosion about five months later. *Id.* Fightertown eventually sued K–C. *Id.* We concluded that Fightertown's injury was not inherently undiscoverable, in part because Fightertown had actually discovered its injury within the limitations period as established under the normal legal-injury accrual rule. *Id.* at *4. Accordingly, we held that the discovery rule did not apply to Fightertown's contract and warranty claims. *Id.* Although *Fightertown* is not binding precedent, *see* TEX.R.APP. P. 47.7(b), it is persuasive authority that the discovery rule ordinarily should not apply when the injury in question is actually discovered within the limitations period that would apply under the legal-injury rule.

We conclude that the discovery rule does not apply to Hola's breach-of-implied-warranty claim for two reasons. First, Hola has not cited any evidence that this type of injury—property damage following allegedly substandard aircraft-engine maintenance and repairs—is "by its nature, unlikely to be discovered within the prescribed limitations period." *Via Net,* 211 S.W.3d at 313–14. Aircraft engines are complex and sophisticated pieces of equipment, involving, in Hola's own words, "finely-machined parts." We cannot simply assume that the damage caused by substandard repair and maintenance of aircraft engines is ordinarily unlikely to be discovered within the limitations period. *See Rogers v. Ricane Enters., Inc.,* 930 S.W.2d 157, 169 (Tex.App.-Amarillo 1996, writ denied) (refusing to apply discovery rule because record did not demonstrate the inherent undiscoverability of the injury). Second, in this particular case, as in *Fightertown,* the evidence establishes that the plaintiff actually discovered its injury within the limitations period. Under such circumstances, it would be particularly inappropriate for us to conclude that the type of injury in question satisfies the "inherently undiscoverable" prong of the test for applicability of the discovery rule. For these reasons, we conclude that the discovery rule does not apply to Hola's implied-warranty claim.

We resolve Hola's fourth issue against it with respect to its implied-warranty claim. In light of our conclusion, we need not consider Hola's second issue, in which Hola argues that the trial court erred by granting GEES's no-evidence motion for summary judgment on Hola's implied-warranty claim.

## B. No-evidence challenge of fraud claim

### 1. Summary

■ In Hola's first issue, it contends that the trial court erred by granting GEES's no-evidence motion for summary judgment on Hola's fraud claim. The elements of fraud are (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the defendant made the representation with the intent that the plaintiff should act on it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff thereby suffered injury. *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.-Dallas 2009, pet. denied). GEES raised a no-evidence challenge to every element of fraud.

Hola relies exclusively on two statements in GEES's May 4, 2000 Airworthiness Approval Tag in support of its fraud claim: (1) that GEES had repaired the engine in accordance with the manufacturer's engine manual, and (2) that the work done on the engine "was carried out in accordance with FAA airworthiness regulations and in respect to the work performed the part(s) is (are) approved for return to service." We conclude that Hola failed to raise a genuine fact issue as to the fourth element of fraud.

**2. Analysis of evidence of intent to induce reliance**

■ Hola contends the evidence raises a genuine fact issue as to whether GEES intended to induce Hola's reliance when GEES made false representations about its work in the airworthiness approval tag. In response, GEES points out that there is no evidence that GEES issued the airworthiness approval tag in question to Hola. Hola concedes that the engine was under lease to a different lessee, America West Airlines, when GEES performed its work and issued the tag, but it argues that privity between Hola and GEES is not required for Hola to make out the element of intent to induce reliance. The case law, however, supports the trial court's decision.

■ The Texas Supreme Court addressed the intent element of fraud in *Ernst & Young, L.L.P. v. Pacific Mutual Life Insurance Co.*, 51 S.W.3d 573, 580 (Tex.2001). In that opinion, the court held that privity between plaintiff and defendant is not necessary to prove the element of intent to induce reliance by the plaintiff. *Id.* On the other hand, mere foreseeability that the plaintiff might rely on the defendant's representation is not enough to show intent. "[T]he claimant's reliance must be 'especially likely' and justifiable, and the transaction sued upon must be the type the defendant contemplated." *Id.* "[E]ven an obvious risk that a third person will rely on a representation is not enough to impose liability." *Id.* at 581; *accord Exxon Corp. v. Emerald Oil & Gas Co.*, No. 05–1076, 2010 WL 5133461, at *19 (Tex. Dec. 17, 2010); *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 922 (Tex.2010).

In the *Ernst & Young* case, Pacific was contemplating purchasing some securities that had been issued by a company called InterFirst. 51 S.W.3d at 575. InterFirst began negotiating a merger with Republic-Bank, and the accounting firm of Ernst & Young audited RepublicBank's financial statements and issued a report opining that the financial statements were accurate. *Id.* RepublicBank incorporated Ernst & Young's reports in various reports and prospectuses. *Id.* After Inter-First and RepublicBank merged, Pacific bought the InterFirst securities and lost money when RepublicBank filed for bankruptcy shortly thereafter. *Id.* Pacific sued Ernst & Young for fraud, and the supreme court held that the trial court had correctly granted summary judgment for

Ernst & Young because that firm had no knowledge of "an especial likelihood that investors like Pacific would rely on Ernst & Young's statements in the merger-related prospectuses in purchasing securities InterFirst had issued years earlier." *Id.* at 581.

In *Exxon Corp.*, the supreme court applied the *Ernst & Young* standard and made it clear that proof of intent to induce the plaintiff's reliance requires proof that the defendant knew of an especial likelihood that the *particular* plaintiff would rely on the defendant's representations. In that case, Exxon plugged a number of mineral wells and filed the required plugging reports with the Texas Railroad Commission. *Exxon Corp.* 2010 WL 5133461, at *1–2. Emerald reviewed those plugging reports and allegedly relied on them when it decided to lease the land. *Id.* at *2. Emerald then sued Exxon for fraud, alleging that the plugging reports were false and that Exxon had intentionally sabotaged the oil field. *Id.* at *3. The trial court granted a directed verdict against Emerald on the fraud claim, but the supreme court held that the trial court erred because there was evidence that Exxon knew of "an especial likelihood Emerald would rely on Exxon's allegedly inaccurate filings with the Railroad Commission." *Id.* at *21. The court emphasized in dicta that less specific knowledge on the part of the defendant would not suffice to raise a fact issue on intent:

> Evidence that reliance on false public information [i]s part of a general industry practice is insufficient, as a matter of law, to prove an intent to induce reliance.... The standard is not met if a defendant merely foresees that some party may rely on statements made in a public filing.
>
> [I]f the evidence shows only that Exxon made material misrepresentations in its plugging reports to the Railroad Commission and knew that lessors and operators in the future may rely on the filings, such evidence would fail as a matter of law under the *Ernst & Young* standard.... The intent-to-induce reliance element of fraud is a focused inquiry, more akin to a rifle shot than a shotgun blast. Intent-to-induce reliance is not satisfied by evidence that a misrepresentation may be read in the future by some unknown member of the public *or of a specific industry.*

*Id.* at *19–20 (emphasis added).

Hola argues that the evidence shows GEES knew the airworthiness approval tag would be reviewed and relied on by subsequent operators of the engine. Hola also contends that the evidence shows that operators could not put the engine into service without an airworthiness approval tag. But even assuming that Hola's account of the evidence is correct, Hola's evidence amounts to nothing more than evidence that unknown members of the aircraft industry might eventually rely on GEES's airworthiness approval tag. Under *Exxon Corp.*, such evidence is insufficient to raise a fact issue as to intent to induce Hola's reliance.

We conclude that Hola failed to raise a genuine fact issue as to GEES's intent to induce reliance, and that GEES's no-evidence challenge to Hola's fraud claim was meritorious. Accordingly, we resolve Hola's first issue against it.

## C. Continuance

▆▆▆▆ In Hola's third issue, it contends that the trial court abused its discretion by denying Hola's motion for continuance. "A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex.2004). When evaluating whether a trial court erred by denying a motion for

continuance seeking additional time to conduct discovery, we may consider such factors as the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Id.*

This case was filed in April 2006, and GEES answered in June 2006. GEES filed its summary-judgment motion in June 2008, and the summary-judgment hearing began in July 2008, more than two years after GEES answered. The trial court reasonably could have concluded that Hola had had ample time in which to conduct discovery.

As to the materiality and purpose of the discovery sought, Hola argues that it was entitled to the continuance because GEES belatedly produced certain emails in discovery on November 6, 2008. Hola contends that the emails documented a GEES investigation into certain roller bearings (including the specific roller bearing part number at issue in this case) that began on or before December 1, 1999 and continued into May 2000 and beyond. Hola argues that the trial court should have given it a continuance so that Hola could depose GEES's corporate representative about the emails, re-depose a witness named George Watkins with the benefit of the emails, and take other discovery from the other persons identified in the emails. But Hola did not explain to the trial court and does not explain to us what information it expected to learn by conducting this additional discovery. Because Hola did not explain what the new information was likely to be, it necessarily also failed to explain why the new information was likely to be material to the summary-judgment proceedings. The trial court reasonably could have concluded that Hola did not demonstrate that additional discovery was likely to reveal additional, material evidence.

Finally, with respect to due diligence, Hola argued to the trial court that GEES should have produced the emails in response to discovery requests Hola had made in October 2006, almost two years before GEES produced them. Hola also filed a copy of an excerpt from GEES's responses to Hola's discovery requests in order to demonstrate that Hola had requested all communications and other documents relating to the bearing. Thus, Hola showed that it used some diligence to prosecute discovery in this case.

Considering the length of time this case was on file before the trial court heard GEES's summary-judgment motion and the weakness of Hola's showing that additional discovery was likely to reveal material information, we conclude that the trial court did not abuse its discretion by failing to grant Hola's motion for continuance. *See Johnston v. Kruse,* 261 S.W.3d 895, 903–04 (Tex.App.-Dallas 2008, no pet.) (no abuse of discretion in denial of continuance; case was two years old, and proposed discovery was cumulative of existing evidence). We resolve Hola's third issue against it.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.