ACCEPTED
13-15-00127-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
9/16/2015 10:59:39 PM
Dorian E. Ramirez
CLERK

# No. 13-15-00127-CV

## IN THE COURT OF APPEALS FOR THE THIRTEENTH JUDICIAL DISTRICT CORPUS CHRISTI & EDINBURG, TEXAS

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
9/16/2015 10:59:39 PM
DORIAN E. RAMIREZ
Clerk

---

**TOM TUCKER, APPELLANT**

**V.**

**CARL BEDGOOD & LAURA BEDGOOD, APPELLEES**

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
9/16/2015 10:59:39 PM
DORIAN E. RAMIREZ
Clerk

---

## On Appeal from the County Court at Law No. 1 of Victoria County, Texas

### APPELLEES' BRIEF

---

Carl Bedgood and Laura Bedgood, Appellees

Rachel F. Klotzman
State Bar No. 24049710
Klotzman Law Firm, PLLC
603 E. Mesquite Lane
Victoria, TX 77901
Tel.: 361 485-9312
Fax: 361 237-3591
Attorney for Carl Bedgood and Laura Bedgood

## ORAL ARGUMENT IS NOT REQUESTED

IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's final judgment, as well as the names and addresses of all trial and appellate counsel.

| PARTIES | COUNSEL |
|---|---|

**Plaintiff:**
Tom Tucker

Hon. Robert P. Houston
30 Meadow View
Victoria, TX 77904

**Defendants:**
Carl Bedgood

Hon. Amanda B. Pierce
603 E. Mesquite Ln.
Victoria, TX 77901

Hon. Rachel F. Klotzman
603 E. Mesquite Ln.
Victoria, TX 77901

Laura Bedgood

Hon. Amanda B. Pierce
603 E. Mesquite Ln.
Victoria, TX 77901

Hon. Rachel F. Klotzman
603 E. Mesquite Ln.
Victoria, TX 77901

TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ...............................................................ii

INDEX OF AUTHORITIES ...............................................................................iv

STATEMENT OF THE CASE ............................................................................. 1

ISSUES PRESENTED ...................................................................................... 2

STATEMENT OF THE FACTS ......................................................................... 3

SUMMARY OF THE ARGUMENT ................................................................... 5

ARGUMENT AND AUTHORITIES .................................................................. 7

    I. Standard of Review .......................................................................... 7

        A. No Evidence Motion for Summary Judgment ........................................ 7

        B. Traditional Motion for Summary Judgment on Affirmative Defenses .... 7

    II. No Evidence Summary Judgment Proper ........................................... 8

        A. Breach of Contract ..................................................................... 10

        B. Common Law Fraud .................................................................... 13

    III. Traditional Summary Judgment Proper ........................................... 14

        A. Statute of Frauds ....................................................................... 15

        B. Statute of Limitations ................................................................. 18

        C. Release ...................................................................................... 22

PRAYER ......................................................................................................... 25

CERTIFICATE OF SERVICE ......................................................................... 26

CERTIFICATE OF COMPLIANCE ............................................................................ 27

APPENDIX ................................................................................................................ A1

    A. Trial Court Judgment ................................................................................ A2

    B. Earnest Money Contract ........................................................................... A3

# INDEX OF AUTHORITIES

## *Supreme Court of Texas*

*Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419 (Tex. 2015) ............. 17, 18

*Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244 (Tex. 2013) ..................................... 7

*Dynegy, Inc. v. Yates*, 422 S.W.3d 638 (Tex. 2013) .................................................. 15

*B.P. Am. Prod. Co. v. Marshall*, 342 S.W.3d 59 (Tex. 2011) ................................... 20

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742 (Tex. 2003) ...................................... 7

*In re First Merit Bank, N.A.*, 52 S.W.3d 749 (Tex. 2001) ........................................ 13

*Murphy v. Campbell*, 964 S.W.2d 265 (Tex. 1997) ................................................... 19

*Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453 (Tex. 1996) ...................... 20,22

*Dresser Indus. v. Page Petroleum*, 853 S.W.2d 505 (Tex. 1993) .......................... 22,23

*Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931 (Tex. 1991) .......................... 23

*Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) ........................ 18,19

*Coker v. Coker*, 650 S.W.2d 391 (Tex. 1983) ............................................................ 23

*Cohen v. McCutchin*, 565 S.W.2d 230 (Tex. 1978) ................................................... 15

*Chevalier v. Lane's, Inc.*, 147 Tex. 106 (1948) ......................................................... 18

*Hooks v. Bridgewater*, 111 Tex. 122 (1921) ............................................................. 17

## *Texas Court of Appeals*

*Garza v. Robinson*, No. 13-11-00015-CV, 2013 WL 3326465 (Tex. App.—Corpus Christi June 27, 2013, no pet.)(mem. op.) ............................................................ 10

*H.S.M. Acquisitions v. West*, 917 S.W.2d 872 (Tex. App.—Corpus Christi 1996, no writ) ...........................................................................................................................7,8

*Moczygemba v. Moczygemba*, 2015 Tex. App. LEXIS 1536 (Tex. App. San Antonio Feb. 18, 2015, pet. filed) ............................................................................................ 20

*Dyer v. Accredited Home Lenders, Inc.*, No. 02-11-00046-CV, 2012 WL 335858 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied)(mem. op.) ........................................... 9

*Baleares Link Express, S.L. v. GE Engine Servs.–Dallas, LP*, 335 S.W.3d 833 (Tex. App.—Dallas 2011, no pet.) ................................................................................ 20, 21

*Dobson v. Metro Label Corp.*, 786 S.W.2d 63 (Tex.App.—Dallas 1990, no writ) ... 15

## *Texas Rules of Civil Procedure*

Tex. R. Civ. P. 166a(i) ........................................................................................ 8

## *Texas Business and Commerce Code*

Tex. Bus. & Com. Code Ann. § 26.01 ........................................................ 11, 12, 15

## *Texas Civil Practice and Remedies Code*

Tex. Civ. Prac. & Rem. Code Ann. § 16.004 .............................................. 18

Tex. Civ. Prac. & Rem. Code Ann. § 16.051(a)(3) ...................................... 18

To the Honorable Thirteenth Court of Appeals:

## STATEMENT OF THE CASE

This was an action for damages for breach of contract, breach of fiduciary duty, common law fraud, statutory fraud, unjust enrichment and civil conspiracy brought by Tom Tucker (hereinafter "Tucker"), appellant, against Carl Bedgood and Laura Bedgood (hereinafter "the Bedgoods"), appellees, in a Texas county court at law (I Suppl. at 421). The Bedgoods filed a traditional and no evidence motion for summary judgment (I Suppl. at 252) and the trial court granted summary judgment in their favor on February 23, 2015 (I Suppl. at 448). The trial court denied Tucker's motion for reconsideration on March 12, 2015 (I Suppl. at 453), and Tucker timely perfected his appeal on March 23, 2015 (I Suppl. at 454). This appeal ensued.

## ISSUES PRESENTED

Issue 1
Did the trial court err in granting the Bedgoods' no evidence summary judgment when Tucker did not address and present summary judgment evidence in connection with the no evidence grounds of statutory fraud, civil conspiracy & breach of fiduciary duty and the evidence produced at the trial court level on the breach of contract, common-law fraud and unjust enrichment grounds did not raise a genuine issue of material fact or the court?

Issue 2
Did the trial court err in granting the Bedgoods' traditional summary judgment motion as to their affirmative defenses of statute of frauds, statute of limitations and release when the movants proved all elements of these affirmative defenses as a matter of law and Tucker did not present controverting summary judgment evidence raising a fact issue?

## STATEMENT OF FACTS

The Bedgoods accept Tucker's statement of facts except where indicated below, with the caveat that the vast majority of the facts from Tucker's Brief originate from the two affidavits of Tom Tucker attached to Plaintiff's Supplementary Response to Defendant's Traditional and No Evidence Motion for Summary Judgment and Plaintiff's Amended Response to Defendant's Traditional Motion for Summary Judgment (hereinafter "Responses"). (I Suppl. at 183,426). The first affidavit referenced by Tucker is from the Clerk's Record pages 197-207 (I Suppl. at 340-50) and the second affidavit spans pages 294-301 (I Suppl. at 439-446). Tucker would no doubt testify, as is sworn to in the aforementioned affidavits

2

and enumerated to this Court through his statement of facts, that the Bedgoods and Tucker had an agreement regarding the land the subject of this suit and that the Bedgoods breached this agreement. (I Suppl. at 340). Specifically, Tucker would testify as he states in his Responses and Brief that "Bedgood agreed to reduce the size of Lots 10 and 11 by 5 feet each and knowingly failed to do so. He accepted consideration in the amount of $25,000 for the agreement to reduce for nothing in return on his part. He acted as the attorney in the transaction and was Tucker's joint venture, and thus had a fiduciary duty to Tucker, which he breached." (Appellee's Brief 6)(I Suppl. at 3). The only evidence in the record of a written agreement supporting Tucker's claims, and the only written contract referenced by Tucker in his Responses, is the earnest money contract between the Bedgoods as sellers and J.P. Bryan (hereinafter "buyer"). (I Supp. At 296-311). Said agreement and addendum state that "[l]ot A-9 will be enlarged to 70 feet by decreasing Lots 10 and 11 by five feet each" (I. Suppl. at 299) and that the Bedgoods "shall convey to the buyer. . . Tract No. A-9 plus adjacent 10 feet out of Tract A-10[.]" (I. Suppl. at 310). The Bedgoods object to the following statements that are not supported by reference to the record:

> This case involves a real estate transaction in 2006 in which Appellee Carl Bedgood and Appellant Tom Tucker agreed to reduce the size of two lots and received consideration for that agreement. Years later Tucker discovered that Bedgood had never effectuated such reduction. (Appellant's Br. 1).

3

Two separate and distinct transactions took place between Tucker and the Bedgoods in this case, one in 2005 and one in 2006. Only the 2006 transaction is the subject of Appellant's claims. (*Id*.). Approximately one year later, in May 2006, Bedgood and Tucker entered into a second agreement involving only three of these lots ("the Bryan transaction.") (*Id*. at 2).

Bedgood received the other $25,000 paid by Bryan for the additional 10 feet. (*Id*. at 3).

Bedgood acted as the attorney for himself and Tucker as the seller and prepared all documents necessary to effectuate the sale of the lot to Bryan. (*Id*. at 4).

Two years later, in 2008, Tucker and Bedgood became embroiled in disputes completely unrelated to the 2006 transaction with Bryan. These 2008 disputes related solely to the 2005 agreement between them and their joint ownership of property acquired under that agreement. (*Id*.).

At the time of that release, Tucker was wholly unaware that Bedgood had not changed title to the lots to reflect the reduced footage. (*Id*.).

The MLS information reflected that Lot 11 was 75 feet wide, rather than the 70 feet as agreed by Bedgood. (*Id*. at 5).

When confronted with this, Bedgood denied having made the agreement. (*Id*.).

4

## SUMMARY OF THE ARGUMENT

This suit arises from an alleged oral agreement incident to the sale of land that resulted in the Bedgoods conveying tract A-9 and Tucker conveying 10 feet out of Tract A-10 to a buyer. The Bedgoods moved for traditional summary judgment on their affirmative defenses of statute of limitations, statute of frauds and release and also on their counter claim for breach of contract (I Suppl. at 257-268). They also moved for a no evidence summary judgment on Tucker's causes of action for breach of contract, statutory fraud, common-law fraud, unjust enrichment, civil conspiracy and breach of fiduciary duty (I Suppl. at 268-273).

Tucker addressed all of the traditional summary judgment grounds in his Responses but failed to address and present summary judgment evidence in connection with the no evidence grounds of statutory fraud, civil conspiracy & breach of fiduciary duty (I Suppl. at 433-437). In Tucker's Appellate Brief he failed to address the Bedgoods' counter-claim for breach of contract as well as the no evidence grounds of statutory fraud, unjust enrichment and civil conspiracy. (Appelant's Br. at 10-13). As Tucker does not challenge the counter-claim and the statutory fraud, unjust enrichment and civil conspiracy no evidence grounds in his Appellate Brief and as he failed to challenge the breach of fiduciary duty ground in his Responses to the trial court these matters are not preserved and are not before this Court. As the trial court granted a general Summary Judgment in favor of the

Bedgoods it follows then that summary judgment could have been granted on the basis of any of the above unpreserved grounds.

What has been preserved for appeal are the three traditional summary judgment affirmative defenses and the no evidence grounds of breach of contract and common-law fraud. The Bedgoods assert that on the no evidence summary judgment grounds before the Court, Tucker failed to produce summary judgment evidence raising a genuine issue of material fact as to each of the challenged elements of these causes of action. Furthermore, all elements of each of the traditional summary judgment affirmative defenses were proved at the trial court and Tucker failed to present controverting summary judgment evidence raising a fact issue. As such, the Bedgoods request that this Court uphold the Summary Judgment.

**ARGUMENT AND AUTHORITIES**

I.     **Standard of Review**
       a. **No Evidence Motion for Summary Judgment**

An appellate court reviews no evidence motions for summary judgment under the same legal sufficiency standard as directed verdicts. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When a party moves for summary judgment on both traditional and no-evidence grounds, the appellate court will address the no evidence grounds first. *Id*. "The nonmovant has the burden to produce summary judgment evidence raising a genuine issue of material fact as to each challenged element of its cause of action." *Id*. "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

       b. **Traditional Motion for Summary Judgment on Affirmative Defenses**

An appellate court reviews traditional summary judgments motions de novo. *See Merriman*, 407 S.W. 3d at 248. The movant must show that the nonmovant has no cause of action, and can do so by proving all elements of an affirmative defense. *See H.S.M. Acquisitions v. West*, 917 S.W.2d 872, 877 (Tex. App.—Corpus Christi

1996, no writ). "If the movant's motion and competent summary judgment evidence establish the movant's right to judgment as a matter of law, the non-movant must present controverting summary judgment evidence raising a fact issue." *Id*.

## II.    No-Evidence Summary Judgment Proper

The Bedgoods sought a no-evidence summary judgment regarding Tucker's following causes of action: breach of contract, common law fraud, statutory fraud, unjust enrichment, civil conspiracy and breach of fiduciary duty. (I. Suppl. at 269-272). Tucker's Responses would have needed to include evidence raising a genuine issue of material fact as to each of these causes of action. Tex. R. Civ. P. 166a(i). Specifically, it is Tucker's burden to produce summary judgment evidence in his Responses to the Bedgoods' No-Evidence Motion for Summary Judgment and said evidence must raise a genuine issue of material fact or the court must grant the motion for summary judgment. *Id*.

In Tucker's Responses to the No Evidence Summary Judgment he states "[t]he Bedgoods' no evidence summary judgment is predicated on a contention that Tucker has not produced any proof whatsoever to support one or more elements of his alleged causes of action. It is the Bedgoods' burden to allege with specificity the precise element of each cause of action which they claim is not supported by any evidence whatsoever. If this is done, then Tucker must offer some evidence in support of each identified element of his cause of action." (Appellant's Br. 8). This

is only partially correct. The movants, the Bedgoods, do have the burden of producing a legally sufficient motion. *See Dyer v. Accredited Home Lenders, Inc.*, No. 02-11-00046-CV, 2012 WL 335858, at \*7 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied)(mem. op.). They do not, however, have a burden to produce evidence. *Id*. Tucker did not object to the form of the Bedgoods' motion and the Bedgoods' have an absolute right to claim that all elements of all of the causes of action are not supported by evidence. This is the purpose of a no evidence motion for summary judgment.  In *Dyer*, the Fort Worth Court of Appeals summarizes these burdens:

> *If the nonmovant does not produce evidence sufficient to raise a fact issue, the trial court must grant the motion. If the movant for some reason attaches evidence to its motion, the trial court may not consider the evidence except in the limited circumstance when the evidence raises a fact issue. But under normal circumstances, no evidence is attached, and none is required for the trial court to grant the motion… We have no choice but to agree with the El Paso and Houston courts. The summary judgment rule puts the burden on the nonmovant to point out evidence to defeat a no-evidence summary judgment, not on the trial court. Although this may create a seemingly unfair result, we must apply the established summary judgment law of Texas and the plain language of the rule. And under our summary judgment law, in the face of a legally sufficient motion for no-evidence summary judgment, the nonmovant must file a response to defeat summary judgment regardless of whether the trial court has before it evidence that would defeat summary judgment if attached to a timely response. The nonmovant must bring that evidence to the attention of the trial court or lose.*

*Id*. at 8. Furthermore, this Court has held that unchallenged grounds for summary judgment are not before the Court for review and, it follows that if not challenged,

those unchallenged grounds alone must uphold the summary judgment. *See Garza v. Robinson*, No. 13-11-00015-CV, 2013 WL 3326465, at *8-9 (Tex. App.—Corpus Christi June 27, 2013, no pet.)(mem. op.). Tucker only appeals and briefs this Court on the granting of no-evidence summary judgment with regard to his claim for breach of contract, common law fraud and breach of fiduciary duty (Appellant's Brief 10). The evidence, however, would need to have be provided by Tucker in his summary judgment response. In said response he only addresses and offers evidence regarding breach of contract and common law fraud. Tucker has waived his right to appeal summary judgment regarding his other claims. The Bedgoods will, therefore, only address whether Tucker produced summary judgment evidence raising a genuine issue of material fact for breach of contract and common law fraud as these are the only two issues included both in Tucker's summary judgment response and appeal.

### a. Breach of Contract

The Bedgoods' Motion asserted that there was no evidence of one or more of the following elements required to prove breach of contract for the sale of real property, on which Plaintiff has the burden of proof at trial:  the existence of a valid written contract, performance or tendered performance by the Plaintiff, breach of the contract by the Defendant, and damages sustained as a result of the breach. In Tucker's Response, he generally alludes to the following evidence supporting his

position: Plaintiff's Amended Response to Traditional Motion for Summary Judgment and Affidavit of Tom Tucker and attachments thereto previously filed in this cause, the Supplementary Affidavit of Tom Tucker attached to the Supplemental Response and the Responses to Interrogatories and Requests for Admission by Carl Bedgood filed in this cause (I C.R. at 282). Specifically, in the section entitled "Tucker's Breach of Contract Claim" Tucker references an earnest money contract attached to the Bedgoods' Motion as well as his two affidavits (I C.R. at 289).

Regarding the first element, the existence of a valid written contract, Tucker references the earnest money contract to support the claim that the Bedgoods' sale of Lot A-11 to TDECU constituted a breach of contract between Tucker and the Bedgoods (I C.R. at 276). The earnest money contract, however, is between the Bedgoods and a third party purchaser and does not set forth any specifics regarding Tucker's compensation or any duty the Bedgoods allegedly had to Tucker regarding deeding a portion of Lot A-11 to Tucker. Tucker asserts in his affidavit that there were oral agreements outside of the written contract that should be enforced by the Court. This court is barred by the rules of law, namely the statute of frauds, from giving weight to the only evidence, namely the affidavit of Tucker, to prove that there was an agreement outside of the written contract that the court must consider. Pursuant to the Texas Business and Commerce Code, section 26.01, the oral agreements made outside of the written earnest money contract are not enforceable.

11

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
    (1) in writing; and
    (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.
(b) Subsection (a) of this section applies to:
    (4) a contract for the sale of real estate

The written earnest money contract does not in any way give rise to Tucker's breach of contract claim against the Bedgoods for the sale of Lot A-11 to TDECU; said contract does not state that the Bedgoods would deed Tucker ten feet of Lot A-11, nor does it state the amount of money Tucker will be compensated for deeding ten feet of Lot A-10 to the third party buyer in the transaction. Tucker then states that "[e]ven if there were no enforceable written agreement in this matter, Tucker has alleged and offered summary judgment evidence sufficient to raise fact issues regarding his plea of partial performance." (I C.R. at 289). To be enforceable, a real estate contract must satisfy the statute of frauds. To be in breach of said contract, the terms of the contract allegedly breached must be specified in the written contract. Tucker cannot establish a breach of the contract as the duty the Bedgoods allegedly owed Tucker is not contained within the written earnest money contract. As the court is barred by the statute of frauds from giving weight to the only evidence offered to prove a vital fact, namely evidence of an oral agreement regarding terms not contained within the written earnest money contract, a no-evidence summary judgment is proper regarding Tucker's claim for breach of contract.

**b. Common Law Fraud**

The Bedgoods further asserted as part of the no-evidence motion there was no evidence of common law fraud. Specifically, one or more of the following elements is lacking: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *See In re First Merit Bank*, *N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

In Tucker's Response, as stated above regarding the breach of contract claim, he generally alludes to the following evidence supporting his position: Plaintiff's Amended Response to Traditional Motion for Summary Judgment and Affidavit of Tom Tucker and attachments thereto previously filed in this cause, the Supplementary Affidavit of Tom Tucker attached to the Supplemental Response and the Responses to Interrogatories and Requests for Admission by Carl Bedgood filed in this cause (I C.R. at 282). Specifically, in the section entitled "Tucker's Fraud Claim" Tucker lists deposition testimony of Carl Bedgood and answers to written discovery as evidence supporting a vital fact in the elements of common law fraud (I C.R. at 289). Tucker states that Carl Bedgood's denial of the promise to split $50,000 with Tucker and denial of an agreement to change the dimensions of Lot A-

13

11 is enough evidence to prevent summary judgment on common law fraud. Tucker would testify that (1) a material representation was made and (2) that the representation was false. Tucker would also say that he (5) acted in reliance on Bedgood's representation and (6) suffered injury. There is no evidence raised by Tucker, however, to support element (3) and (4). Furthermore, Tucker alleges fraud as an attempt to circumvent the statute of frauds bar on his breach of contract claim. He cannot recover for breach of an alleged oral agreement from the earnest money contract, nor can he try to recover under fraud for the same alleged breach of the same alleged oral agreement.

## III.    Traditional Summary Judgment Proper

If this Court does not uphold the summary judgment on the above no-evidence grounds, the Bedgoods would show that they properly pled and conclusively proved each essential element of the following affirmative defenses; statute of frauds, statute of limitations and mutual release, and, Tucker did not, by his Response, present a fact question on at least one element of each of these affirmative defenses. Furthermore, Tucker does not challenge the grounds for summary judgment on Bedgoods' counter claim for breach of contract, therefore those are not addressed as they are not before this Court.

### a. The Statute of Frauds

Chapter 26 of the Texas Business and Commerce Code, regarding the statute of frauds, states that a contract for the sale of real estate, or an agreement which is not to be performed within one year from the date of making the agreement, is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement. *See* Tex. Bus. & Com. Code § 26.01. The applicability of the statute of frauds to an agreement is a question of law to be decided by the court. *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642 (Tex. 2013). To satisfy the statute of frauds, there must be a written memorandum which is complete within itself in every material detail and which contains all of the essential elements of the agreement so that the contract can be ascertained from the writing without resorting to oral testimony. *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978); *Dobson v. Metro Label Corp.*, 786 S.W.2d 63, 65 (Tex.App.—Dallas 1990, no writ). The written memorandum must, within itself or by reference to other writings and without resort to parol evidence, contain all the elements of a valid contract, including an identification of both the subject matter of the contract and the parties to the contract. *Cohen*, 565 S.W.2d at 232; *Dobson*, 786 S.W.2d at 65.

Tucker did not produce a document memorializing the alleged breached agreement between the parties. Rather, Tucker relies on his testimony regarding oral

15

agreements between the parties as a basis for his causes of action. The only written document in this case is between a third party purchaser and the Bedgoods, wherein the Bedgoods agreed to sell a 70' Lot A-9 for $275,000.00 (I Suppl. At 296). As the agreement alleged by Tucker regarding his claims is oral, Tucker then has the burden to present evidence to raise a fact question defeating the statute of frauds.

In his Response, Tucker alleges that "[i]n order to comply with the statute of frauds, there only need be a writing, signed by the party sought to be charged, evidencing an agreement to do something." (I Suppl. At 430). This is not a correct application of the rule. The writing must contain all of the essential elements of the agreement, including identification of the subject matter of the contract and the parties to the contract. The earnest money contract relied on by Tucker to overcome the statute of frauds does not speak to the agreement allegedly breached by the Bedgoods. Tucker does not raise a fact question by merely stating that there is a written document signed by Bedgood evidencing an agreement to do something. The breach of contract alleged by Tucker is the sale by the Bedgoods of Lot A-11 to TDECU. Tucker believes he and Bedgood had an agreement wherein Bedgood would deed him five feet of Lot A-11, which cannot be done as the lot was sold. Nothing in the written earnest money contract speaks to this agreement.

Tucker also raises the "doctrine of part performance" as a fact issue defeating summary judgment as a matter of law on the statute of frauds (I Suppl. At 286). The

Texas Supreme Court has stated that for an oral agreement, or a parol sale of land, to be removed from the Statute of Frauds three things are necessary: 1) payment of the consideration, 2) possession by the vendee and 3) the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. *Hooks v. Bridgewater*, 111 Tex. 122, 126-27 (1921). Tucker did not take possession of the 5 feet of Lot 11 nor did he make valuable improvements to it. (I Suppl. At 409). Tucker alleges the presence of the fact that he conveyed the ten feet of Lot A-10 to the third party seller in reliance on an oral agreement that the Bedgoods would convey to Tucker five feet of Lot A-11 would make the transaction a fraud upon the purchaser if it were not enforced and that this raises a fact issue (I Suppl. At 431). Tucker admits that he did not read or look at the documents he received at the closing in 2006 and that he thought the deed from the Bedgoods for five feet had been done or would be done at some later date (I Suppl. at 341, 400). A party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms, especially when the party had a reasonable opportunity to review the written agreement but failed to exercise ordinary care to do so. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424-25 (Tex. 2015). Furthermore, "[t]here must be performance 'unequivocally referable' to the agreement" to satisfy the exception to

the statute of frauds. *Chevalier v. Lane's, Inc.*, 147 Tex. 106, 113 (1948). The 'partial performance' alleged by Tucker is the fact that he deeded ten feet of Lot A-10 to the third party buyer at the closing. For this, he was paid a portion of the sale price at closing (I Suppl. at 341). He alleges that as part of this agreement Bedgood was bound to deed him five feet of Lot A-11. This, however, was at most an "oral misrepresentation" of the sale's "unambiguous terms" and Tucker had opportunity to review all the documentation for the sale and raise any objections at that time but he failed to do so.

### b. The Statute of Limitations

The Statute of Limitations is four years after the day the cause of action accrues for breach of a contract for the conveyance of real property. Tex. Civ. Prac. & Rem. Code Ann. § 16.051(a)(3). Fraud, Civil Conspiracy, Unjust Enrichment, and Breach of fiduciary duty claims generally accrue, and the four year statute of limitations begins to run, when the claimant knows or in the exercise of ordinary diligence should know of the wrongful act and resulting injury. Tex. Civ. Prac. & Rem. Code Ann. § 16.004. "When the legislature employs the term "accrues" without an accompanying definition, the courts must determine when that cause of action accrues and thus when the statute of limitations commences to run." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). "A cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of

18

when the plaintiff learned of such injury." *Id*. If the agreement was as alleged by Tucker, the Bedgoods would convey the third party buyer all of Lot A-9, Tucker would convey ten feet of Lot A-10 to the same buyer and Bedgood would convey Tucker five feet of Lot A-11, with Tucker and Bedgood splitting $50,000 for these additional ten feet, that agreement would have been breached at closing on May 23, 2006 when the Bedgoods did not convey five feet of Lot A-11 to Tucker and Tucker was paid for conveying ten feet of his lot to the seller (I Suppl. at 340-343). The fraud, civil conspiracy, unjust enrichment and breach of fiduciary duty claims would also have accrued on the same date. As this suit was filed October 1, 2014 (I Suppl. at 7), over eight years had passed from the accrual of Tucker's claims which is clearly contrary to the statute of limitations. It is Tucker's burden, then, to raise a fact issue which would defeat the statute of limitations. An exception to when the cause of action accrues is the discovery rule; alleged by Tucker in his Responses (I Suppl. at 428). The Bedgoods deny that the discovery rule applies in this case for the reasons set forth below.

The discovery rule applies in cases of fraud and fraudulent concealment, and in other cases in which 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.'" *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997). The Bedgood's burden is to negate the discovery rule by proving either that the rule does not apply or there is no genuine issue of material

fact about when the plaintiff discovered or, in the exercise of reasonable diligence, should have discovered the nature of the alleged injury. *Moczygemba v. Moczygemba*, 2015 Tex. App. LEXIS 1536, \*10 (Tex. App. San Antonio Feb. 18, 2015). The Bedgoods believe that the discovery rule does not apply as 1) Tucker's alleged injury was not inherently undiscoverable and 2) the evidence of injury is objectively verifiable. Furthermore, there is no genuine issue of material fact about when the plaintiff, in the exercise of reasonable diligence, should have discovered that he was not deeded five feet of Lot A-11.

An injury is inherently undiscoverable if it is the type of injury that is not generally discoverable by the exercise of reasonable diligence. *See BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011). "The requirement of inherent undiscoverability recognizes that the discovery rule exception should be permitted only in circumstances where 'it is difficult for the injured party to learn of the negligent act or omission.' " *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (*quoting Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)). The court decides whether the nature of a plaintiff's injury is "inherently undiscoverable," on a categorical basis rather than a case-specific basis. *Baleares Link Express, S.L. v. GE Engine Servs.–Dallas, LP*, 335 S.W.3d 833, 837 (Tex .App.—Dallas 2011, no pet.). The court's focus is on whether a type of injury rather than a particular injury,

20

is unlikely to be discovered within the prescribed limitations period despite due diligence. *Id.*

The Plaintiff admits that he never read or even looked at the documents he received at the closing in 2006 and acknowledges that he did not receive a deed to five feet of Lot A-11 from Bedgood at the closing (I Suppl. at 340-43, 402-03). The Courts have repeatedly found that parties are charged with knowing what is contained in paragraphs in documents they have in their possession. Tucker, with his 20 years of real estate expertise, could have easily looked through his closing documents to see if he had a deed to five feet of Lot A-11 (I Suppl. at 395). By his own admission, he did nothing from the closing in 2006 until this petition was filed. Inaction can never equate to reasonable due diligence.

Whether the discovery rule applies is a question of law for the Court. Tucker alleges that 1) "he did not discover that Bedgood had not altered the size of Lot A-10 and A-11 until 2014," 2) his lack of knowledge was due to the fact that "the Bedgoods and he were in a fiduciary relationship and . . . he relied on and trusted the Bedgoods to do what they had obligated themselves to do." (I Suppl. at 428-429). The alleged injury suffered here was plainly discoverable if Tucker had read the closing documents prior to signing. Furthermore, the mere recital that "Bedgood and he were in a fiduciary relationship" because Tucker "pled the fiduciary relationship" between the parties does not raise a fact issue as this information is not objectively

verifiable. Tucker instead places the burden on the Bedgoods to prove "by competent summary judgment evidence that such a relationship did not exist." (I Suppl. at 429). "But the fiduciary rationale is, in reality, a variation on the inherently undiscoverable element. Fiduciaries are presumed to possess superior knowledge, meaning the injured party, the client, is presumed to possess less information than the fiduciary. Consequently, in the fiduciary context, it may be said that the nature of the injury is presumed to be inherently undiscoverable, although a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs." *Computer Assocs. Int'l*, 918 S.W.2d at 456. There was no ongoing attorney-client relationship between Bedgood and Tucker, as evidenced by the Non-Representation letters signed by Tucker (I Suppl. at 293). Tucker provides the Court with an earnest money contract and deposition testimony that shows merely that ten feet of his land was deeded to the third party buyer but cannot and does not show that this transfer was in anyway fraudulent or wrong. Since the discovery rule does not apply, Tucker's suit was filed outside of the limitations period and the affirmative defense of Statute of Limitations is proven as a matter of law.

### c. Mutual Release

The parties in this case signed a document entitled "Mutual Release" on August 28, 2008. A release "surrenders legal rights or obligations between the parties to an agreement" and operates to extinguish the claim or cause of action as

effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter." *Dresser Indus. V. Page Petroleum*, 853 S.W.2d 505, 508 (Tex. 1993). A release is "expressly designated as an affirmative defense." *Id.* (*citing* Tex. R. Civ. P. 94). In order to establish the affirmative defense of release, the Bedgoods must show that the releasing instrument "mentions" the claim to be released and that the claim is clearly within the subject matter of the release. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991)

Tucker's claims in this case arise from a 2006 sale of land to a third party. He asserts that the release was only intended for claims arising from a 2005 investment agreement and was not related to the sale of land to a third party and that the release was procured by fraud (I Suppl. at 186). If a release is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). The Mutual Release states:

> *WHEREAS, certain disagreements have arisen between BEDGOOD and TUCKER concerning the scope of the agreement and other agreements, issue, claims, transactions and causes of action relating to Tracts A-1 through A-11 of the Partition of the La Salle Hotel Tract…. WHEREAS, the parties hereto are desirous of settling all of their disputes, issues, causes of action or claims against each other relating to Tracts A-1 through A-11 of the Partition of the La Salle Hotel Tract.*

(I Suppl. at 322). The release, as quoted above, is not ambiguous and explicitly references disagreements relating to Tracts A-1 through A-11. The Release mentions

23

an April 22, 2005 investment agreement in a paragraph before the language above,

so that "the agreement" would refer to the April 22, 2005 investment agreement and

"other agreements, issue, claims, transactions and causes of action" would

encompass the 2006 sale. Even if "the agreement" is referring to the 2005 investment

agreement, the drafters clearly took into consideration other agreements, issues,

claims, and transactions.

> *NOW, THEREFORE, in consideration of the mutual promises and agreements herein contained, TUCKER does RELEASE, ACQUIT and FOREVER DISCHARGE BEDGOOD and his wife, children, heirs, assigns, agents, and legal representatives of and from any and all claims or causes of action of any kind whatsoever, at common law, statutory or otherwise, in contract or in tort, which existed before and as of the date of this agreement, including any and all claims or causes of action which TUCKER did not know or suspect to exist in his favor at the time of the execution of this agreement, directly or indirectly attributable to, or arising out of or relating to all of their disputes, issues or claims against each other relating to Tracts A-1 through A-11 of the Partition of the LA SALLE HOTEL .....This Release is intended to be and is final and binding between the parties hereto regardless of any claim of misrepresentation, promise made without the intention of performing, concealment of fact, mistake of fact or law, or any other circumstances whatsoever other than as set forth in this Release. Each party is aware that it may hereafter discover claims or facts in addition to or different for those it now knows or believes to be true with respect to the matters related herein. Nevertheless, it is the intention of the parties to fully, finally and forever settle all such matters, and all claims relative thereto, which now exist, may exist, or heretofore have existed between them with respect to Tracts A-1 through A-11 of the Partition of the LA SALLE HOTEL.*

(I Suppl. at 324). The 2006 sale of Lot A-9 is clearly within the "all claims or causes

of action of any kind whatsoever…relating to Tracts A-1 through A-11." Tucker is

barred from suit for breach of contract, fraud, civil conspiracy, unjust enrichment, and breach of fiduciary duty claims regarding a claim for a lot which was expressly released by the agreement.

## PRAYER

For these reasons, the Bedgoods ask this Court to affirm the trial court's summary judgment.

Respectfully submitted,

KLOTZMAN LAW FIRM, PLLC
603 E. Mesquite Ln.
Victoria, TX 77901
Tel: (361) 485-9312
Fax: (361) 237-3591

By: *Rachel F. Klotzman*
_____
Rachel F. Klotzman
State Bar No. 24049710
Attorney for Appellees

## CERTIFICATE OF SERVICE

This certifies that the undersigned served this Appellees' Brief on Tom Tucker, Appellant, by sending it to lead counsel for Appellant, Robert P. Houston, at 30 Meadow View, Victoria, TX 77904, by electronic service by transmission to an electronic filing service provider for service through the state's electronic filing manager on September 16, 2015.

_Rachel F. Klotzman_
_____
Rachel F. Klotzman
Attorney for Cross-Appellants

CERTIFICATE OF COMPLIANCE WITH APPELLATE RULE 9.4(i)

I certify that this document contains 5911 words, as indicated by the word-count function of the computer program used to prepare it, and excluding the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, as provided by Appellate Rule 9.4(i).

Rachel F. Klotzman
Attorney for Appellees

# APPENDIX

**CAUSE NO. CIV1-17046**

| | | |
|---|---|---|
| TOM TUCKER | § | IN THE COUNTY COURT |
| | § | |
| v. | § | AT LAW NUMBER 1 |
| | § | |
| ROBERT CARL BEDGOOD | § | VICTORIA COUNTY, TEXAS |

## JUDGMENT

On this the 18th of February, 2015, the Court heard the Defendant's Traditional and No Evidence Motion for Summary Judgment against Plaintiff filed in this cause. Plaintiff appeared by his attorney, Robert P. Houston, and Defendant appeared by his attorney, Amanda Pierce.

The Court has considered the records and files in this matter, the affidavits on file and all other papers and documents filed by the parties, and the oral argument of counsel for the respective parties and the briefs filed by counsel, and finds that there is no genuine issue of material facts and that Defendant is entitled to judgment as a matter of law.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED, that Defendant's Traditional and No Evidence Motion for Summary Judgment against Plaintiff is hereby GRANTED, and that summary judgment be entered in favor of Defendant and against Plaintiff.

IT IS ACCORDINGLY ORDERED, ADJUDGED, AND DECREED, that Defendant recover from Plaintiff judgment for $_____ in reasonable and necessary attorney's fees. All relief not expressly granted herein is denied.

SIGNED this _23_ day of February, 2015.

_10:00_ **FILED** O'CLOCK _a/m_

FEB 23 2015

Heidi Easley
Clerk County Court, Victoria County, Texas
By _____ Deputy

_____
HONORABLE TRAVIS H. ERNST

A2

# UNIMPROVED PROPERTY CONTRACT
### NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** Carl Bedgood, and wife Laura Bedgood _____ (Seller)
agrees to sell and convey to J P Bryan, _____
_____ (Buyer) and Buyer agrees
to buy from Seller the property described below.

2. **PROPERTY:** Lot A-9 _____ , Block _____ 1 _____ , La Salle Addition _____
Addition, City of _____ , _____ Calhoun _____ County, Texas, known as
Lot A-9 Park St. Port O'Connor _____ 77982
_____ (address/zip code),
or as described on attached exhibit together with all rights, privileges and appurtenances pertaining thereto, including but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association memberships (the Property).

3. **SALES PRICE:**
A. Cash portion of Sales Price payable by Buyer at closing ..................................... $ _____ 27,500.00
B. Sum of all financing described below ......................................................... $ _____ 247,500.00
C. Sales Price (Sum of A and B) ..................................................................... $ _____ 275,000.00

4. **FINANCING:** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
☒ A. **THIRD PARTY FINANCING:** One or more third party mortgage loans in the total amount of
$ 247,500.00 . If the Property does not satisfy the lenders' underwriting requirements for the loan(s), this contract will terminate and the earnest money will be refunded to Buyer. (Check one box only)
  ☒ (1) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Condition Addendum.
  ☐ (2) This contract is not subject to Buyer being approved for financing.
☐ B. **ASSUMPTION:** The assumption of the unpaid principal balance of one of more promissory notes described in the attached TREC Loan Assumption Addendum.
☐ C. **SELLER FINANCING:** A promissory note from Buyer to Seller of $ _____ , bearing _____ % interest per annum, secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

5. **EARNEST MONEY:** Upon execution of this contract by both parties, Buyer shall deposit $ 2,500.00 ,
as earnest money with _____ Bedgood Title Company _____ as escrow agent,
at _____ 300 E. Airline, Victoria, TX 77901 _____
(address). Buyer shall deposit additional earnest money of $ N/A with escrow agent within _____ days after the effective date of this contract. If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.

6. **TITLE POLICY AND SURVEY:**
☒ A. **TITLE POLICY:** Seller shall furnish to Buyer at ☒ Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by _____ Bedgood Title Company _____
(Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
  (1) Restrictive covenants common to the platted subdivision in which the Property is located.
  (2) The standard printed exception for standby fees, taxes and assessments.
  (3) Liens created as part of the financing described in Paragraph 4.
  (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
  (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
  (6) The standard printed exception as to marital rights.
  (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
  (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines,

Initialed for identification by Buyer _____ and Seller _____     01A     TREC NO. 9-5
(TAR-1607) 1-6-03     Page 1 of 8
ERA Realty Group, Inc. 302 E. Airline, Victoria TX 77901
Phone: 361-572-3333    Fax: 361-572-8979     Tom Tucker, Broker     Lot A-9 POC.zf
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com

A3

encroachments or protrusions, or overlapping improvements. Buyer, at Buyer's expense, may have the exception amended to read, "shortages in area".

B. **COMMITMENT:** Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to mail or hand deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or the Closing Date, whichever is earlier.

C. **SURVEY:** The survey must be made by a registered professional land surveyor acceptable to the Title Company and any lender. (Check one box only)

☐ (1) Within _____ days after the effective date of this contract, Seller, at Seller's expense, shall furnish a new survey to Buyer.

☒ (2) Within ___20___ days after the effective date of this contract, Buyer, at Buyer's expense, shall obtain a new survey.

☐ (3) Within _____ days after the effective date of this contract, Seller shall furnish Seller's existing survey of the Property to Buyer and the Title Company, along with Seller's affidavit acceptable to the Title Company for approval of the survey. If the survey is not approved by the Title Company or Buyer's lender, a new survey will be obtained at ☐ Seller's ☐ Buyer's expense no later than 3 days prior to the Closing Date.

D. **OBJECTIONS :** Within __5__ days after Buyer receives the Commitment, Exception Documents and the survey, Buyer may object in writing to (i) defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (8) above; (ii) any portion of the Property lying in the 100 year flood plain as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity: **Single Family Residence** .

Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived. Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. **TITLE NOTICES:**

(1) **ABSTRACT OR TITLE POLICY:** Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) **MANDATORY OWNERS' ASSOCIATION MEMBERSHIP:** The Property ☒ is ☐ is not subject to mandatory membership in an owners' association. If the Property is subject to mandatory membership in an owners' association, Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community in which the Property is located, you are obligated to be a member of the owners' association. Restrictive covenants governing the use and occupancy of the Property and a dedicatory instrument governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. You are obligated to pay assessments to the owners' association. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of the Property.

(3) **STATUTORY TAX DISTRICTS:** If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) **TIDE WATERS:** If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

Initialed for identification by Buyer _____ and Seller _____ 01A TREC NO. 9-5

(TAR-1607) 1-6-03 Page 2 of 8

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com Lot A-9 POC.zf

A4

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) UNIMPROVED PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: If the Property is located in a certificated service area of a utility service provider and the Property does not receive water or sewer service from the utility service provider on the date the Property is transferred, §13.257, Texas Water Code, requires a notice regarding the cost of providing water or sewer services to the Property. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☒ is not located in a Texas Agricultural Development District.

## 7. PROPERTY CONDITION:

A. INSPECTIONS, ACCESS AND UTILITIES: Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Seller shall pay for turning on existing utilities.
   NOTICE: Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. ACCEPTANCE OF PROPERTY CONDITION: Buyer accepts the Property in its present condition; provided Seller, at Seller's expense, shall complete the following: **Bring in fill dirt to raise level of lot to the same as adjoining lots**

C. COMPLETION OF REPAIRS: Unless otherwise agreed in writing, Seller shall complete all agreed repairs prior to the Closing Date. All required permits must be obtained, and repairs must be performed by persons who are licensed or otherwise permitted by law to provide such repairs. At Buyer's election, any transferable warranties received by Seller with respect to the repairs will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may do so and receive reimbursement from Seller at closing. The Closing Date will be extended up to 15 days, if necessary, to complete repairs.

D. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

E. SELLER'S DISCLOSURES: Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
   (1) any flooding of the Property which has had a material adverse effect on the use of the property;
   (2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
   (3) any environmental hazards or conditions which materially affect the Property;
   (4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
   (5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
   (6) any threatened or endangered species or their habitat affecting the Property.

## 8. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

## 9. CLOSING:

A. The closing of the sale will be on or before _____**April 21**_____ ,**2006**_____ , or within 7 days after objections to matters disclosed in the Commitment or by the survey have been cured, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
   (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.

Initialed for identification by Buyer _____ and Seller _____  01A  TREC NO. 9-5

(TAR-1607) 1-6-03                                                          Page 3 of 8
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com          Lot A-9 POC.zf

A5

(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.

(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this contract, the Commitment or law necessary for the closing of the sale and the issuance of the Title Policy.

C. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

D. All covenants, representations and warranties in this contract survive closing.

**10. POSSESSION:** Seller shall deliver possession of the Property to Buyer upon closing and funding.

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to this sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)

Lot A-9 will be enlarged to 70 feet by decreasing lots 10 and 11 by five feet each.

**12. SETTLEMENT AND OTHER EXPENSES:**

A. The following expenses must be paid at or prior to closing:

(1) Expenses payable by Seller (Seller's Expenses):

(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.

(b) Seller shall also pay an amount not to exceed $ __N/a_____ to be applied to Buyer's Expenses.

(2) Expenses payable by Buyer (Buyer's Expenses):

(a) Loan origination, discount, buy-down, and commitment fees (Loan Fees).

(b) Appraisal fees; loan application fees; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; mortgagee title policy with endorsements required by lender; loan-related inspection fees; photos, amortization schedules, one-half of escrow fee; transfer fees for cooperative or association membership for utility services; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee, repair inspection, underwriting fee and wire transfer, expenses incident to any loan, and other expenses payable by Buyer under this contract.

B. Buyer shall pay Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender.

C. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veteran's Housing Assistance Program or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**

A. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of

Initialed for identification by Buyer _____ and Seller _____ CB        01A        TREC NO. 9-5
(TAR-1607) 1-6-03                                                                        Page 4 of 8
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com        Lot A-9 POC.zf

A6

additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Seller's change in use of the Property prior to closing or denial of a special use valuation on the Property claimed by Seller results in Assessments for periods prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

14. **CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any obligations of Seller under Paragraph 7.

15. **DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If, due to factors beyond Seller's control, Seller fails within the time allowed to make any non-casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may (a) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (b) terminate this contract as the sole remedy and receive the earnest money. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. **MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion ☐ will ☒ will not be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. **ATTORNEY'S FEES:** The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party.

18. **ESCROW:** The escrow agent is not (a) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (b) liable for interest on the earnest money and (c) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent. At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If both parties make written demand for the earnest money, escrow agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of escrow agent from all parties. If one party makes written demand for the earnest money, escrow agent shall give notice of the demand by providing to the other party a copy of the demand. If escrow agent does not receive written objection to the demand from the other party within 30 days after notice to the other party, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money. Escrow agent's notice to the other party will be effective when deposited in the U. S. Mail, postage prepaid, certified mail, return receipt requested, addressed to the other party at such party's address shown below. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** Seller represents that as of the Closing Date (a) there will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing payment of any loans assumed by Buyer and (b) assumed loans will not be in default. If any representation of Seller in this contract is untrue on the Closing Date, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

Initialed for identification by Buyer _____ and Seller _____    **01A**    TREC NO. 9-5

(TAR-1607) 1-6-03    Page 5 of 8

A7

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile as follows:

**To Buyer at:**

1221 Lamar, Suite 1175

Houston, Tx 77010

Telephone: _____

Facsimile: _____

**To Seller at:**

300 E. Airline

Victoria, TX 77901

Telephone: (361) 573-1785

Facsimile: (361) 575-7581

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

[X] Third Party Financing Condition Addendum

[ ] Seller Financing Addendum

[ ] Loan Assumption Addendum

[X] Addendum for Property Subject to Mandatory Membership in an Owners' Association

[ ] Addendum for Sale of Other Property by Buyer

[ ] Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

[X] Other (list): Information on Broker Services

[X] Addendum for Coastal Area Property

[ ] Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

[ ] Addendum for Release of Liability on Assumption of FHA, VA, or Conventional Loan Restoration of Seller's Entitlement for VA Guaranteed Loan

[X] Addendum for Unimproved Property Located in a Certificated Service Area of a Utility Service Provider

[ ] Addendum for "Back-Up" Contract

Initialed for identification by Buyer _____ and Seller _____ LB          **01A**          TREC NO. 9-5

A8

23. **TERMINATION OPTION: This paragraph will be a part of this contract ONLY if both blanks are filled in and Buyer has paid the Option Fee.** Buyer has paid Seller $N/A_____ (Option Fee) for the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ days after the effective date of this contract. If Buyer gives notice of termination within the time specified, the Option Fee will not be refunded, however, any earnest money will be refunded to Buyer. The Option Fee ☐ will ☐ will not be credited to the Sales Price at closing. For the purposes of this paragraph, time is of the essence; strict compliance with the time for performance stated herein is required.

24. **CONSULT AN ATTORNEY:** Real estate licensees cannot give legal advice. READ THIS CONTRACT CAREFULLY. If you do not understand the effect of this contract, consult an attorney BEFORE signing.

Buyer's
Attorney is: _____

Seller's
Attorney is: Self _____

_____

_____

Telephone: _____

Telephone: _____

Facsimile: _____

Facsimile: _____

EXECUTED the ___28th___ day of ___March___, ___2006___ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

Buyer  P Bryan

Seller Carl Bedgood

Buyer

Seller and wife Laura Bedgood

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544 (http://www.trec.state.tx.us) TREC NO. 9-5. This form replaces TREC NO. 9-4.

Initialed for identification by Buyer _____ _____ and Seller _____ _____          01A          TREC NO. 9-5

(TAR-1607) 1-6-03                                                                                        Page 7 of 8

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com          Lot A-9 POC.zf

A9

## SELLER'S RECEIPT

Receipt of $ N/A _____ (Option Fee) in the form of _____ is acknowledged.

_____
Seller Carl Bedgood                                    Date
    and wife Laura Bedgood

## BROKER INFORMATION AND RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

_____          ERA Realty Group, Inc._____
Other Broker                                             Listing Broker

_____          _____
License No.                    Telephone     License No.                    Telephone

represents ☐ Buyer only as Buyer's agent        represents ☐ Seller and Buyer as an intermediary
        ☐ Seller as Listing Broker's subagent                    ☒ Seller only as Seller's agent

_____          _____
Associate                                              Listing Associate
                                                       Tom Tucker
                                                       (361)572-3333
_____          _____
Telephone                                              Telephone
                                                       302 E. Airline Victoria, TX 77901
_____          Listing Associate's Office Address
Broker's Address                                       (361)572-8979
_____          _____
Facsimile                                              Facsimile

                                                       _____
                                                       Selling Associate

                                                       _____
                                                       Telephone

                                                       _____
                                                       Selling Associate's Office Address

                                                       _____
                                                       Facsimile

## RECEIPT

Receipt of ☑ Contract and ☑ $ 2,500.00 Earnest Money in the form of _check_
is acknowledged.
Escrow Agent: Bedgood Title Company                    Date: 3/28/06

By: _____

300 E. AIRLINE _____          Telephone _____
Address
Victoria_____ TX_____ 77901 Facsimile: _____
City                    State            Zip

01A          TREC NO. 9-5
(TAR-1607) 1-6-03                                                      Page 8 of 8
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com          Lot A-9 POC.zf

A10



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

# THIRD PARTY FINANCING CONDITION ADDENDUM

### TO CONTRACT CONCERNING THE PROPERTY AT

Lot A-9 Park St. Port O'Connor
_____
(Street Address and City)

Buyer shall apply promptly for all financing described below and make every reasonable effort to obtain financing approval including but not limited to furnishing all information and documents required by lender for approval. Financing approval will be deemed to have been obtained when the lender determines that Buyer has satisfied all of lender's financial requirements (those items relating to Buyer's assets, income and credit history). If Buyer cannot obtain financing approval, Buyer must give written notice to Seller within ___25___ days after the effective date of this contract and this contract will terminate and the earnest money will be refunded to Buyer. **If Buyer does not give such notice within the time allowed, this contract will no longer be subject to Buyer being approved for the financing described below. For purposes of this paragraph, time is of the essence; strict compliance with the times for performance herein stated is required.**

Each note must be secured by vendor's and deed of trust liens.

☒ A. CONVENTIONAL FINANCING:
    ☒ (1) A first mortgage loan in the principal amount of $ _247,500.00_____ (excluding any financed PMI premium), due in full in _____20_____ year(s), with interest not to exceed ____8.000____ % per annum for the first ___20___ year(s) of the loan with Loan Fees (loan origination, discount, buy-down, and commitment fees) not to exceed ____3.000____ % of the loan.
    ☐ (2) A second mortgage loan in the principal amount of $ _____ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Loan Fees (loan origination, discount, buy-down, and commitment fees) not to exceed _____ % of the loan.

☐ B. TEXAS VETERANS' HOUSING ASSISTANCE PROGRAM LOAN: A Texas Veteran's Housing Assistance Program Loan of $ _____ for a period of at least _____ years at the interest rate established by the Texas Veteran's Land Board at the time of closing.

☐ C. FHA INSURED FINANCING: A Section _____ FHA insured loan of not less than $ _____ (excluding any financed MIP), amortizable monthly for not less than _____ years, with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Loan Fees (loan origination, discount, buy-down, and commitment fees) not to exceed _____ % of the loan. As required by HUD-FHA, if FHA valuation is unknown, "_It is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the purchaser (Buyer) has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $ _____. The purchaser (Buyer) shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The purchaser (Buyer) should satisfy himself/herself that the price and the condition of the Property are acceptable._"

Initialed for identification by Buyer _____ and Seller _____
(TAR- 1901) 2-9-2004

**01A**     TREC NO. 40-1
Page 1 of 2

ERA Realty Group, Inc. 302 E. Airline, Victoria TX 77901
Phone: 361-572-3333    Fax: 361-572-8979     Tom Tucker, Broker        Lot A-9 POC.zf
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com

A11

Lot A-9 Park St. Port O'Connor, , TX  77982
(Address of Property)

☐ D.  VA GUARANTEED FINANCING: A VA guaranteed loan of not less than $ _____
(excluding any financed Funding Fee), amortizable monthly for not less than _____ years,
with interest not to exceed _____ % per annum for the first _____ year(s) of the loan
with Loan Fees (loan origination, discount, buy-down, and commitment fees) not to exceed
_____ % of the loan.

VA NOTICE TO BUYER: *"It is expressly agreed that, notwithstanding any other provisions of this
contract, the Buyer shall not incur any penalty by forfeiture of earnest money or otherwise or be obligated
to complete the purchase of the Property described herein, if the contract purchase price or cost exceeds
the reasonable value of the Property established by the Department of Veterans Affiars. The Buyer shall,
however, have the privilege and option of proceeding with the consummation of this contract without
regard to the amount of the reasonable value established by the Department of Veterans Affairs."*

If Buyer elects to complete the purchase at an amount in excess of the reasonable value established by
VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA
and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable
value of the Property is less than the Sales Price, Seller may reduce the Sales Price to an amount equal to
the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate
adjustments to the down payment and the loan amount.

Buyer hereby authorizes any lender to furnish to the Seller or Buyer or their representatives information relating
only to the status of financing approval of Buyer.

Buyer _____
J P Bryan

Buyer _____

Seller _____
Carl Bedgood

Seller _____
and wife Laura Bedgood

The form has been approved by the Texas Real Estate Commission for use with similarly approved or
promulgated contract forms. Such approval relates to this form only. TREC forms are intended for
use only by trained real estate licensees. No representation is made as to the legal validity or
adequacy of any provision in any specific transactions. It is not suitable for complex transactions.
Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512)
459-6544 (http://www.trec.state.tx.us) TREC No. 40-1. This form replaces TREC No. 40-0.

01A                    TREC NO. 40-1

(TAR- 1901) 2-9-2004                                                          Page 2 of 2

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com          Lot A-9 POC.zf

A12



APPROVED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
P.O. BOX 12188, AUSTIN, TX 78711-2188

8-15-05

# ADDENDUM FOR
# PROPERTY LOCATED IN A
# CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER

## TO CONTRACT CONCERNING THE PROPERTY AT

Lot A-9 Park St. Port O'Connor

(Location of Property)

**IN ACCORDANCE WITH SECTION 13.257, TEXAS WATER CODE, THE FOLLOWING STATEMENT IS INCLUDED AS PART OF THE CONTRACT:**

### NOTICE TO PURCHASERS

The real property, described above, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property.

The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in the notice or at closing of purchase of the real property.

Except for notices included as an addendum to or paragraph of a purchase contract, the notice must be executed by the seller and purchaser, as indicated.

| | | | |
|---|---|---|---|
| Buyer (Purchaser) | Date | Seller | Date |
| J P Bryan | | Carl Bedgood | |
| Buyer (Purchaser) | Date | Seller | Date |
| | | and wife Laura Bedgood | |

The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544 (http://www.trec.state.tx.us) (9/05)TREC No. OP-M

**01A**     TREC No. OP-M

(TAR-1927) 8-15-05     Page 1 of 1

ERA Realty Group, Inc. 302 E. Airline, Victoria TX 77901
Phone: 361-572-3333    Fax: 361-572-8979    Tom Tucker, Broker     Lot A-9 POC.zf

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com

A13



# ADDENDUM FOR PROPERTY SUBJECT TO
# MANDATORY MEMBERSHIP IN AN OWNERS' ASSOCIATION
## (NOT FOR USE WITH CONDOMINIUMS)
### ADDENDUM TO CONTRACT CONCERNING THE PROPERTY AT

Lot A-9 Park St. Port O'Connor
_____
(Street Address and City)

_____
(Name of Owners' Association)

**A. SUBDIVISION INFORMATION:** "Subdivision Information" means: (i) the restrictions applying to the subdivision, (ii) the bylaws and rules of the Owners' Association, and (iii) a resale certificate, all of which were provided by the Owners' Association in compliance with Section 207.003 of the Texas Property Code no more than three months before the date of their delivery to Buyer.
(Check only one box):

[X] 1. Within _____1_____ days after the effective date of the contract, Seller shall at Seller's expense deliver the Subdivision Information to Buyer. If Buyer does not receive the Subdivision Information, Buyer may terminate the contract at any time prior to closing and the earnest money will be refunded to Buyer. If Seller delivers the Subdivision Information, Buyer may terminate the contract for any reason within 7 days after Buyer receives the Subdivision Information or prior to closing, whichever first occurs, and the earnest money will be refunded to Buyer.

[ ] 2. Buyer has received and approved the Subdivision Information before signing the contract.

[ ] 3. Buyer does not require delivery of the Subdivision Information.

If Seller becomes aware of any material changes in the Subdivision Information, Seller shall immediately give notice to Buyer. Buyer may terminate the contract prior to closing by giving written notice to Seller if: (i) any of the Subdivision Information provided was not true; or (ii) any material adverse change in the Subdivision Information occurs prior to closing, and the earnest money will be refunded to Buyer.

**B. TRANSFER FEES:** Buyer shall pay any Owners' Association transfer fee not to exceed $ N/A and Seller agrees to pay any excess.

**NOTICE TO BUYER REGARDING REPAIRS BY THE OWNERS' ASSOCIATION:** The Owners' Association may have the sole responsibility to make certain repairs to the Property. If you are concerned about the condition of any part of the Property which the Owners' Association is required to repair, you should not sign the contract unless you are satisfied that the Owners' Association will make the desired repairs.

Buyer J P Bryan _____    Seller Carl Bedgood _____

Buyer _____    Seller and wife Laura Bedgood _____

The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts. Such approval relates to this contract form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544 (http://www.trec.state.tx.us) TREC No. 36-3. This form replaces TREC No. 36-2.

**01A**
Page 1 of 1

(TAR-1922) 2-9-2004
ERA Realty Group, Inc. 302 E. Airline, Victoria TX 77901
Phone: 361-572-3333    Fax: 361-572-8979    Tom Tucker, Broker    Lot A-9 POC.zf

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com

A14


EQUAL HOUSING OPPORTUNITY

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
P.O. BOX 12188, AUSTIN, TX 78711-2188

12-05-94

# ADDENDUM FOR
# COASTAL AREA PROPERTY

## ADDENDUM TO EARNEST MONEY CONTRACT BETWEEN THE UNDERSIGNED PARTIES CONCERNING THE PROPERTY AT

Lot A-9 Park St. Port O'Connor

(Location of Property)

**IN ACCORDANCE WITH SECTION 33.135, TEXAS NATURAL RESOURCES CODE, THE FOLLOWING NOTICE IS INCLUDED AS PART OF THE CONTRACT:**

### NOTICE REGARDING COASTAL AREA PROPERTY

1. The real property described in and subject to this contract adjoins and shares a common boundary with the tidally influenced submerged lands of the state. The boundary is subject to change and can be determined accurately only by a survey on the ground made by a licensed state land surveyor in accordance with the original grant from the sovereign. The owner of the property described in this contract may gain or lose portions of the tract because of changes in the boundary.

2. The seller, transferor, or grantor has no knowledge of any prior fill as it relates to the property described in and subject to this contract except: _____

   _____

   _____

3. State law prohibits the use, encumbrance, construction, or placing of any structure in, on, or over state-owned submerged lands below the applicable tide line, without proper permission.

4. The purchaser or grantee is hereby advised to seek the advice of an attorney or other qualified person as to the legal nature and effect of the facts set forth in this notice on the property described in and subject to this contract. Information regarding the location of the applicable tide line as to the property described in and subject to this contract may be obtained from the surveying division of the General Land Office in Austin.

Buyer J P Bryan _____

Buyer _____

Seller Carl Bedgood _____

Seller and wife Laura Bedgood _____

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. (12-94) TREC No. 33-0.

TREC No. 33-0
Page 1 of 1

(TAR-1915) 12-5-94

ERA Realty Group, Inc. 302 E. Airline, Victoria TX 77901
Phone: 361-572-3333     Fax: 361-572-8979     Tom Tucker, Broker     Lot A-9 POC.zf

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com

A15

*Texas law requires all real estate licensees to give the following information
about brokerage services to prospective buyers, tenants, sellers and landlords.*

# Information About Brokerage Services

Before working with a real estate broker, you should know that the duties of a broker depend on whom the broker represents. If you are a prospective seller or landlord (owner) or a prospective buyer or tenant (buyer), you should know that the broker who lists the property for sale or lease is the owner's agent. A broker who acts as a subagent represents the owner in cooperation with the listing broker. A broker who acts as a buyer's agent represents the buyer. A broker may act as an intermediary between the parties if the parties consent in writing. A broker can assist you in locating a property, preparing a contract or lease, or obtaining financing without representing you. A broker is obligated by law to treat you honestly.

## IF THE BROKER REPRESENTS THE OWNER:

The broker becomes the owner's agent by entering into an agreement with the owner, usually through a written listing agreement, or by agreeing to act as a subagent by accepting an offer of subagency from the listing broker. A subagent may work in a different real estate office. A listing broker or subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first. The buyer should not tell the owner's agent anything the buyer would not want the owner to know because an owner's agent must disclose to the owner any material information known to the agent.

## IF THE BROKER REPRESENTS THE BUYER:

The broker becomes the buyer's agent by entering into an agreement to represent the buyer, usually through a written buyer representation agreement. A buyer's agent can assist the owner but does not represent the owner and must place the interests of the buyer first. The owner should not tell a buyer's agent anything the owner would not want the buyer to know because a buyer's agent must disclose to the buyer any material information known to the agent.

## IF THE BROKER ACTS AS AN INTERMEDIARY:

A broker may act as an intermediary between the parties if the broker complies with The Texas Real Estate License Act.

The broker must obtain the written consent of each party to the transaction to act as an intermediary. The written consent must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. The broker is required to treat each party honestly and fairly and to comply with The Texas Real Estate License Act. A broker who acts as an intermediary in a transaction:

(1) shall treat all parties honestly;

(2) may not disclose that the owner will accept a price less than the asking price unless authorized in writing to do so by the owner;

(3) may not disclose that the buyer will pay a price greater than the price submitted in a written offer unless authorized in writing to do so by the buyer; and

(4) may not disclose any confidential information or any information that a party specifically instructs the broker in writing not to disclose unless authorized in writing to disclose the information or required to do so by The Texas Real Estate License Act or a court order or if the information materially relates to the condition of the property.

With the parties' consent, a broker acting as an intermediary between the parties may appoint a person who is licensed under The Texas Real Estate License Act and associated with the broker to communicate with and carry out instructions of one party and another person who is licensed under that Act and associated with the broker to communicate with and carry out instructions of the other party.

**If you choose to have a broker represent you,**
you should enter into a written agreement with the broker that clearly establishes the broker's obligations and your obligations. The agreement should state how and by whom the broker will be paid. You have the right to choose the type of representation, if any, you wish to receive. Your payment of a fee to a broker does not necessarily establish that the broker represents you. If you have any questions regarding the duties and responsibilities of the broker, you should resolve those questions before proceeding.

Real estate licensee asks that you acknowledge receipt of this information about brokerage services for the licensee's records.

_____  _____

Buyer, Seller, Landlord or Tenant                                                   Date

Texas Real Estate Brokers and Salesmen are licensed and regulated by the Texas Real Estate Commission (TREC). If you have a question or complaint regarding a real estate licensee, you should contact TREC at P.O. Box 12188, Austin, Texas 78711-2188 or 512-465-3960.



Computer generated using AutoContract™ v5.06 software, from AutoRealty Products, Inc., 1050 W. Pipeline, Suite 101, Hurst, TX 76053, (800) 322-1178
This installation of AutoContract™ is licensed for use to: William Tucker, and is not transferable. Use by others is a violation of federal copyright law under Title 17 U.S.C. §101.

C:\PROGRAM FILES\ACWIN\WKFILES\Untitled
printed 07-28-2003

A16

# ADDENDUM TO
## UNIMPROVED EARNEST MONEY CONTRACT
### DATED
### BETWEEN
### ROBERT CARL BEDGOOD, LAURA BEDGOOD AND TOM TUCK, SELLERS
### AND
### J. P. BRYAN, BUYER

THE FOLLOWING SPECIAL TERMS AND PROVISIONS SHALL APPLY TO AND CONTROL OVER ANY CONTRARY PORTIONS OF THE ATTACHED EARNEST MONEY CONTRACT:

1.      Sellers shall convey to the buyer and/or his assignee all of the Surface Estate in and to that certain tract of land described as being Tract No. A-9 plus adjacent 10 feet out of Tract A-10 of LA SALLE HOTEL Addition an subdivision in Townsite of Port O'Connor, Calhoun County, Texas  according to the metes and bounds description and plat attached hereto, subject to subject to any building lines, easements & restrictions to be place on the property by Seller if the property is dedicated as a subdivision ( copy of restrictions attached) .  Seller shall have the right but not the duty to dedicate the Old La Salle Hotel Site as a subdivision in the future and the Buyer expressly agrees to ratify said dedication according to the plans and plat as agreed to between the County of Calhoun and the Seller.

2.      Neither Seller or Buyer may, without the prior written consent of the other, disclose to any person the economic terms of this Contract, except to the extent necessary to fulfill its terms.  This covenant shall survive closing.

3.      **Grantor shall execute and deliver a Deed in accordance with the form attached hereto granting and conveying the Subject Property, and Grantee shall accept the Deed and restrictions as set out in the attached deed, AS IS, WHERE IS, AND WITH ALL FAULTS, AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER ( EXCEPT AS TO TITLE AS HEREIN SET FORTH), EXPRESS OR IMPLIED, WRITTEN OR ORAL, IT BEING THE INTENTION OF GRANTOR AND GRANTEE TO EXPRESSLY NEGATE AND EXCLUDE ALL REPRESENTATIONS AND WARRANTIES (EXCEPT THE WARRANTY OF TITLE EXPRESSLY SET FORTH HEREIN), INCLUDING, BUT NOT LIMITED TO (i) ANY REPRESENTATION OR WARRANTY AS TO THE CONDITION OF THE SUBJECT PROPERTY, INCLUDING, WITHOUT LIMITATION, WARRANTIES RELATED TO SUITABILITY FOR HABITATION, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE; (ii) THE SOIL CONDITIONS, DRAINAGE, FITNESS OR SUITABILITY OF WATER WELL AND EQUIPMENT OR OTHER CONDITIONS EXISTING AT THE SUBJECT PROPERTY WITH RESPECT TO ANY PARTICULAR PURPOSE, DEVELOPMENT POTENTIAL OR OTHERWISE; (iii) QUANTITY, QUALITY, VALUE OR CONDITION; (iv) COMPLIANCE WITH ANY LAW, ORDINANCE, COUNTY OR CITY CODE; (v) ALL OTHER WARRANTIES AND**

**REPRESENTATIONS WHATSOEVER, EXCEPT THE WARRANTY OF TITLE EXPRESSLY SET FORTH HEREIN.**

4. Seller as advised and Buyer acknowledges being advised that there has been past and present Oil, Gas and Other Minerals Development on the property and has had pipelines crossing the property. Sellers make not warrants as to and Buyer accepts the property subject to any violations of The Comprehensive Environmental Response, Compensation, and Liability Act of 1980, ("CERCLA") as amended by the Superfund Amendments and Reauthorization Act (SARA), 42 U. S. C. § 9601 or location of any abandoned pipelines.

The grantor gives no warranty against and grantee shall accept the property subject to any wetlands problems any violations of The Comprehensive Environmental Response, Compensation, and Liability Act of 1980, ("CERCLA") as amended by the Superfund Amendments and Reauthorization Act (SARA), 42 U. S. C. § 9601, any cost for clean up of hazardous waste, and any common law or statutory liability to third parties due to any hazardous waste that was brought onto, stored or placed upon the property prior to grantee acquiring the property. Grantee shall assume reponsibility for any environmental problems that may arise in the future or be associated with the property.

5. The grantor gives the grantee notice that they should do an Environmental Assessment as to Threatened or Endangered Species and Wetlands Addendum at their expense but this contract is not conditioned upon the results of said Environmental Assessment, Threatened or Endangered Species and Wetlands Reports. Grantor gives no warranty against and grantee shall accept the property subject to any Environmental, Threatened or Endangered Species and Wetlands problems.

BUYERS:                          SELLERS:

_____

A18